STATE of Tennessee, Petitioner,

v.

James Thomas BANKS, Respondent.

Supreme Court of Tennessee.

April 17, 1978.

David L. Raybin, Asst. Atty. Gen., Nashville, for petitioner; Brooks McLemore, Jr., Atty. Gen., Nashville, of counsel.

Robert L. Tucker, Roger A. Stetter, U. T. Legal Clinic, Robert W. Ritchie, Knoxville, for respondent.

## OPINION

BROCK, Justice.

The defendant was convicted of second degree murder and sentenced to 99 years imprisonment. He appealed and the Court of Criminal Appeals conditionally granted a new trial.

The defendant Banks and the victim, Sidney Edward Smith, Jr., attended a party together on the night of the slaying. Banks offered to take Smith home from the party. The next morning Smith's nude body was found lying in a ditch in a Knoxville park. Death had been caused by multiple wounds to the face and head, apparently by the use of a heavy blunt object. Circumstantial evidence pointed strongly to the defendant as the killer. He was seen sitting in his car near the location of the body on the night of the homicide and was also seen in his car with the victim on that night. There was evidence of homosexual or deviate sexual activity between Smith and the defendant. A nightstick of the type used by the defendant in his employment as a security guard and which was capable of inflicting the fatal wounds was found in the defendant's automobile. This nightstick had traces of blood on it. A blood stained leaf found in the defendant's car matched the deceased's blood type. Defendant's automobile was found unlocked in a parking lot a mile or more from the defendant's home. The defendant told conflicting stories about his activities on the night of the slaying.

At the trial the State, over the objection of the defendant, introduced into evidence color photographs, both prints and slides, which depicted the victim's battered head and body. As noted, the defendant objected to the introduction of these photographs upon the ground that they were not relevant to any contested issue in the case and were introduced solely for the purpose of prejudicing the jury against the defendant. The defendant also renewed these objections in his motion for a new trial but did

not assign the introduction of these photographs as error in the Court of Criminal Appeals. Nevertheless, that court concluded that the introduction of the photographs amounted to plain error, T.C.A., § 40–3409; *Baldwin v. State*, 213 Tenn. 49, 372 S.W.2d 188 (1963), which it was bound to notice and, accordingly, held that a new trial must be afforded the defendant unless the State agreed to accept a reduction of the sentence from 99 years to the minimum of 10 years provided by statute for second degree murder. This Court granted the State's petition for certiorari to consider this single issue.

## I

■ Traditionally, this Court has followed a policy of liberality in the admission of evidence in both civil and criminal cases, *State ex rel. Smith v. Livingston Limestone Co.*, Tenn., 547 S.W.2d 942 (1977), including the admission of photographs. *Hughes v. State*, 126 Tenn. 40, 148 S.W. 543 (1912); *Brown v. State*, 186 Tenn. 378, 210 S.W.2d 670 (1948); *Livermore Foundry & Machine Co. v. Union Storage & Compress Co.*, 105 Tenn. 187, 58 S.W. 270 (1900); D. Paine, *Tennessee Law of Evidence* § 238 (1974). This policy of liberality is often expressed in the "rule" that the admissibility of photographs lies within the discretion of the trial court whose ruling in this respect will not be overturned on appeal except upon a clear showing of an abuse of discretion. *Strickland Transportation Company v. Douglas*, 37 Tenn.App. 421, 264 S.W.2d 233 (1953); 29 Am.Jur.2d *Evidence* § 785 (1967); D. Paine, *Tennessee Law of Evidence* § 238 (1974). Moreover, the trend of modern authority is to vest more discretion in the trial court in this respect. *Cagle v. State*, Tenn. Cr.App., 507 S.W.2d 121 (1973); *See*: Uniform Rules of Evidence, Rules 4 and 45, National Conference of Commissioners on Uniform State Laws (1953).

■ Of course, before any photograph can be admitted into evidence it must be verified and authenticated by a witness with knowledge of the facts.

■ Once authenticity has been established relevance must be shown. We approve the following definition of relevance found in Rule 401 of the new Federal Rules of Evidence:

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See also* Uniform Rules of Evidence, Rule 1, *supra*.

A requirement of probability any more stringent than this would be unworkable and unrealistic.

■ Of course, relevance varies as the elements of the particular offense and the means employed in its commission vary. It has been declared by one court that photographs of the victim and other physical evidence are always relevant to the material facts in a homicide prosecution if the defendant pleads not guilty, *Commonwealth v. Novak*, 395 Pa. 199, 150 A.2d 102 (1959), but other courts pursue a more narrow analysis of the elements each side must prove and may rebut. For example, where "extreme cruelty and atrocity" constitutes one of the categories of first-degree murder, that fact is legitimately a part of the State's case, and photographs are a proper mode of proving it. *Commonwealth v. Osman*, 284 Mass. 421, 188 N.E. 226 (1933). But where the basis of first-degree murder is a clear-cut case of felony homicide, there is no occasion to prove the character and extent of the wounds at all, and certainly not by inflammatory photographs. *Commonwealth v. Powell*, 428 Pa. 275, 241 A.2d 119 (1968).

■ Photographs showing the injuries of the victim are properly admitted if the defendant admits he killed the victim but seeks to show a non-criminal homicide or that the offense was of a lesser degree than murder. Where malice and intent to kill

are denied, the State may prove by a photograph that greater force was used against the victim than is consistent with the defendant's account of the facts. *Wilkerson v. State*, 170 Tex.Cr.R. 525, 342 S.W.2d 431 (1961). Where the accused claimed he acted in an insane frenzy, the court approved the use of photographs showing the systematic manner in which he tied up his several victims before killing them one by one. *People v. Speck*, 41 Ill.2d 177, 242 N.E.2d 208 (1968).

In *Cullaro v. State*, Fla.App., 97 So.2d 40 (1957), photographs were held properly received to rebut a claim of self defense because they showed that there were no powder burns on the body, such as would have been inflicted had the shots been fired at close range during a struggle.

In *Alcorta v. State*, Tex.Cr.App., 294 S.W.2d 112 (1956), where the defendant denied stabbing the victim thirty-two times as the State charged, and contended that one Natividad had delivered the fatal blow by striking the victim on the head with a rock, photographs belying his story were shown to the jury as shedding light upon a material and controverted fact.

In cases of vehicular homicide where the state must establish criminal culpability by the degree of negligence on the part of the defendant, the observable condition of the victim may be a proper matter for the jury to consider in determining the manner and speed at which the defendant was operating his automobile. *Pribyl v. State*, 165 Neb. 691, 87 N.W.2d 201 (1957). *See also People v. Donaldson*, 8 Ill.2d 510, 134 N.E.2d 776 (1956); *Price v. State*, Miss., 54 So.2d 667 (1951); *State v. Butler*, 27 N.J. 560, 143 A.2d 530 (1958).

Photographs showing the brutally beaten body of the defendant's twenty-one-month-old daughter were admitted to show he did more than discipline her with a small switch in *Hancock v. State*, 209 Miss. 523, 47 So.2d 833 (1950). And, where a crucial issue in establishing guilt was whether a particular type of flex-handled wrench found near the defendant's home was the murder weapon, a photograph of the body showing the wound was peculiarly helpful to the jury. *People v. Carter*, 48 Cal.2d 737, 312 P.2d 665 (1957).

■ In this state, deliberation or premeditation is an element of the crime charged against this defendant, viz., first degree murder. We have held that in attempting to establish the degree of the homicide, the state may properly introduce evidence bearing on that issue. In *State v. LaChance*, Tenn., 524 S.W.2d 933 (1975), we observed:

"We think that the intent to kill may be inferred from the brutality of the attack.

\*   \*   \*   \*   \*   \*

" '[T]he succession of blows, the patently vicious manner of their infliction, the enormity of the cruelty and the horrendous injuries suffered provide further evidence of a wilful execution of an intent to kill.' " 524 S.W.2d 937, 938.

We quoted with approval from *McGill v. State*, 4 Tenn.Cr.App. 710, 475 S.W.2d 223 (1972):

" 'Concerning the weight and sufficiency of evidence to establish premeditation, and particularly with reference to the nature of the act causing death, many courts have held that deliberation and premeditation may be inferred from the manner in which the killing was committed; and that repeated shots, blows, and other acts of violence are sufficient evidence of premeditation.' " 524 S.W.2d at 938.

And in *State v. Bullington*, Tenn., 532 S.W.2d 556, 560 (1976), we held that one circumstance from which the inference of premeditation may be drawn is "repeated shots or blows inflicted upon the victim."

We conclude, therefore, that the photographs here in issue may be considered to have passed the test of relevancy with respect to the issue of deliberation.

II

■ The traditional rule is said to be that photographs of the corpse are admissible in

murder prosecutions if they are relevant to the issues on trial, notwithstanding their gruesome and horrifying character. *People v. Jenko*, 410 Ill. 478, 102 N.E.2d 783 (1951). Conversely, if they are not relevant to prove some part of the prosecution's case, they may not be admitted solely to inflame the jury and prejudice them against the defendant. *Milam v. Commonwealth*, Ky., 275 S.W.2d 921 (1955).

▪ But even relevant evidence should not be admitted if its prejudicial effect outweighs its probative value. Fed. R.Evid. 403; Uniform Rules of Evidence 45, *supra*.

Federal Rule 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In the explanatory note to Rule 403, "unfair prejudice" is defined by the Advisory Committee as:

"An undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

See also *Haddad v. Kuriger*, Ky., 437 S.W.2d 524 (1968); *State v. Martinez*, 92 Idaho 183, 439 P.2d 691 (1968); *Thibodeau v. Connecticut Co.*, 139 Conn. 9, 89 A.2d 223 (1952); *Moeller v. Hauser*, 237 Minn. 368, 54 N.W.2d 639, 57 A.L.R.2d 364 (1952).

We regard this rule as one that is fair and just and strikes a reasoned balance between probative value and unfair prejudice; we approve it as a proper guide to be followed by our courts in both criminal and civil cases.

▪ Cases recognizing the inherently prejudicial character of photographic depictions of a murder victim enunciate a test whereby certain factors are to be considered by the trial judge. The matters to be taken into consideration include the value of photographs as evidence, that is, their accuracy and clarity, and whether they were taken before the corpse was moved, if the position and location of the body when found is material; the inadequacy of testimonial evidence in relating the facts to the jury; and the need for the evidence to establish a *prima facie* case of guilt or to rebut the defendant's contentions. If the inflammatory nature of the photograph is thus outweighed, it is admissible.

▪ The more gruesome the photographs, the more difficult it is to establish that their probative value and relevance outweigh their prejudicial effect. *Commonwealth v. Scaramuzzino*, 455 Pa. 378, 317 A.2d 225 (1974). In the presence of an offer to stipulate the facts shown in the photograph, the State's burden of justification is often difficult to sustain. *People v. Chavez*, 50 Cal.2d 778, 329 P.2d 907 (1958); *Poe v. Commonwealth*, Ky.App., 301 S.W.2d 900 (1957). Failure of the defense to dispute the testimony that the photographs illustrate may have the same effect. *People v. Falkner*, 389 Mich. 682, 209 N.W.2d 193 (1973); *State v. Bucanis*, 26 N.J. 45, 138 A.2d 739 (1958).

In some cases, photographic evidence has been excluded because it does not add anything to the testimonial descriptions of the injuries. *Archina v. People*, 135 Colo. 8, 307 P.2d 1083 (*en banc*, 1957); *Dyken v. State*, Fla., 89 So.2d 866 (*en banc*, 1956); *State v. Morgan*, 211 La. 572, 30 So.2d 434 (1947). Those made during or after an autopsy are most often condemned, *Kiefer v. State*, 239 Ind. 103, 153 N.E.2d 899 (1958); *State v. Bucanis, supra*, because they present an even more horrifying sight and show the body in an altered condition and because lay jurors normally do not have the experience necessary to draw correct inferences from the appearance of internal organs. *State v. Morris*, 245 La. 175, 157 So.2d 728 (1963).

In many cases, the facts concerning the injuries and the cause of death may be adequately established and better explained

by a pathologist. In this case, for instance, except for one aspect mentioned below, the testimony gives a far better description of the nature and extent of the wounds inflicted on the victim than the pictures do. The defense did not seriously dispute the cause of death; it sought mainly to show the good relationship of the deceased and the defendant. It did not offer any alternate theory of how the deceased met his death. Thus, the factual issue was not squarely raised in the manner of self-defense, accident or manslaughter cases. *Cullaro v. State, supra; Pribyl v. State, supra; Alcorta v. State, supra.*

It is true that the defense, upon cross-examination of the pathologist, Dr. Jones, elicited the testimony that the head wounds could have been made by a car running over the victim. Perhaps those pictures may have been slightly relevant to that issue. Nevertheless, their worth seems slight, especially in view of the fact that the slides were taken after the body had been moved from the scene so that the condition of the ground, which would have been highly relevant in resolving that narrow question, was not shown.

As above observed, the number of blows and the brutality of the crime was a circumstance bearing on the element of deliberation or premeditation. A case can be imagined in which a photograph could supplement the medical testimony to give a better understanding of the number of wounds inflicted and the manner in which the killing was carried out, but this was not one. The pathologist catalogued the injuries and described them in detail. He gave more information about them than the photographs do. His explanation is readily understandable without a pictorial portrayal. There is no question, from the whole of the testimony, that death was inflicted from a succession of blows to the head and other parts of the body. The mere recital of the internal injury caused by an object shoved into the anus of the victim establishes premeditation far more vividly than the photographs in issue do.

The State's argument that the photographs are relevant to the assessment of punishment is candid but unpersuasive. Shocking and horrifying the jury emotionally does not assist them in making a reasoned determination of how serious the crime is, how much deterrence is necessary to prevent like crimes in the future, or what danger the defendant poses to society. It is precisely because of the danger that they will inflict excessive punishment that unnecessarily inflammatory evidence is kept from them. *Kiefer v. State, supra; People v. Jackson,* 9 Ill.2d 484, 138 N.E.2d 528 (1956). The fact that death is now an available penalty for homicide poses, in view of the existing law on that thorny subject, a strong consideration in opposition to appealing to the emotions of jurors in the assessment of punishment.

The Court of Criminal Appeals noted that the trial judge's reasons for admitting the photographs do not appear of record. We regard this as an omission of some seriousness. Without a statement of reasons, the appellate court is constrained to some extent to second-guess the trial judge in a determination lying within his sound discretion. See *People v. Ford,* 60 Cal.2d 772, 36 Cal.Rptr. 620, 388 P.2d 892 (1964). There is authority for reversing a conviction for failure of the trial judge to weigh the probative value of photographs against their prejudicial effect. The record should show the factors considered by lower courts and their reasons for receiving the evidence.

■ On balance we conclude, as did the unanimous Court of Criminal Appeals, that the prejudicial effect of these photographs far outweighs their probative value. Therefore, it was error for the trial court to admit the photographs in evidence.

However, it does not follow that the Court of Criminal Appeals was correct in reversing the judgment of the trial court. T.C.A., § 27–117, provides:

"No verdict or judgment shall be set aside or new trial granted by any appel-

late court, in any civil or criminal case, on . . . account of the improper admission . . . of evidence . . ., unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial."

Following an examination of the entire record in this case, we are of the opinion that it does not affirmatively appear that the error in admission of the photographs has affected the results of the trial. The circumstances of this homicide, aside from the photographs, are so brutal and horrible that they fully explain and support the verdict of guilty and the severity of the sentence.

Accordingly, the judgment of the Court of Criminal Appeals is reversed and that of the trial court reinstated. Costs are taxed to the defendant. The cause is remanded to the trial court for such further proceedings as may be appropriate.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.