STATE of Tennessee, Appellee,

v.

**David Earl MILLER, Appellant.**

Supreme Court of Tennessee, at Knoxville.

April 24, 1989.

Rehearing Denied June 19, 1989.

Mark E. Olive, Tallahassee, Fla., Robert C. Edwards, Knoxville, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Debra K. Inglis, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

FONES, Justice.

This is a direct appeal from a resentencing hearing, ordered by this Court in *State v. Miller*, 674 S.W.2d 279 (Tenn.1984), wherein his conviction of murder in the first degree was affirmed. The first sentencing hearing was reversed because the State introduced evidence that defendant had been twice arrested on charges of rape. Both charges were dismissed.

At the 1982 sentencing hearing, the only aggravating circumstance that the State sought to prove was that the murder was heinous, atrocious or cruel, in that it involved torture or depravity of mind. At the resentencing hearing in 1987, the State added two additional aggravating circumstances, to wit, the murder was committed for the purpose of avoiding, interfering with or preventing a lawful arrest or prosecution of defendant, and the murder was committed while defendant was engaged in committing rape. T.C.A. § 39–2–203(i)(6) and (i)(7). The jury rejected the two additional aggravating circumstances, but imposed the sentence of death upon the finding that the murder was especially heinous, atrocious and cruel.

Defendant asks the Court to reconsider two issues involved in the guilt-innocent phase of the first trial, to wit, the trial judge's instruction allegedly shifting the burden of proof in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61

L.Ed.2d 39 (1979) and denial of appointment of a psychiatrist to aid defendant, allegedly in violation of *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

All of the issues relevant to the guilt or innocence of defendant that were raised at the 1982 trial of this case, and raised on the direct appeal were dealt with in this Court's opinion released in 1984. All of the guilt-innocent issues were foreclosed when the 1984 opinion sustaining defendant's conviction of first degree murder became final, except such issues as are permissible in a post-conviction proceeding. In addition to that elementary principle, such issues are never relevant at a sentence hearing or a resentence hearing. *See State v. Adkins,* 725 S.W.2d 660 (Tenn.1987); *State v. Hartman,* 703 S.W.2d 106 (Tenn.1985).

Defendant asserts that error was committed in allowing the State to rely on two aggravating circumstances not relied upon at the first sentencing hearing. First, defendant says that the double jeopardy clause was violated. The U.S. Supreme Court has held that "aggravating circumstances" are not offenses, but are "standards to guide the making of [the] choice" between death and life imprisonment. *Poland v. Arizona,* 476 U.S. 147, 156, 106 S.Ct. 1749, 1755, 90 L.Ed.2d 123 (1986) (quoting *Bullington v. Missouri,* 451 U.S. 430, 438, 101 S.Ct. 1852, 1858, 68 L.Ed.2d 270 (1981)). The Court held that so long as the appellate court had not found the evidence legally insufficient to justify imposition of the death penalty, the double jeopardy clause does not foreclose a second sentencing hearing at which the "clean slate" rule applies.

Next defendant argues that the two additional aggravating circumstances were based upon the theory that defendant had committed the crime of rape upon the victim, when in fact defendant had been acquitted of rape at the first trial. That contention is totally lacking in merit. Defendant was not charged with the offense of rape and thus could not have been acquitted of that offense. Defendant attempts to magnify an evidentiary ruling of the trial judge at the first trial regarding the use of the word rape, into an acquittal of that offense.

Finally, defendant's contention with respect to the State's presentation of two aggravating circumstances not used at the first sentencing hearing were rendered moot by the jury's implicit rejection of both. The record shows that the jury's verdict found the aggravating circumstances that the murder was especially heinous, atrocious or cruel only, with no negative or affirmative finding as to the aggravating circumstances in subsections (i)(6) and (i)(7) of T.C.A. § 39–2–203. *See State v. Smith,* 695 S.W.2d 954, 959 (Tenn.1985).

Defendant alleges error in the admission of testimony by the victim's mother, that the victim had attended special education classes since she started school in Colorado. She had been tested at the University of Colorado, with the result that she was placed in special education classes. Mrs. Standifer testified that her daughter had slight diffuse brain damage.

Defendant insists that such evidence falls within the category of "personal characteristics of the victim", held to be improper sentencing characteristics in *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). We find that the mentioned evidence was relevant at the resentencing as part of the essential background of the crime in capital cases in order to insure that the jury acts from a base of knowledge in sentencing defendant. *State v. Teague,* 680 S.W.2d 785, 788 (Tenn. 1984). Also, this single characteristic was insignificant in comparison with the large package of endearing traits involved in *Booth* that added up to a Victim Impact Statement. There is no merit to this issue.

Defendant alleges reversible error in the introduction of photographs of the victim taken at the scene of the crime and at the morgue. The trial judge carefully applied the balancing process required by *State v. Banks,* 564 S.W.2d 947 (Tenn.1978) and found that the probative value of that evidence outweighed the prejudicial effect, on the issue of the heinous, atrocious, cruel aggravating circumstances. We have care-

fully reviewed this issue and we agree with the trial judge the photographs supplemented the testimony of the pathologist and showed the shocking force and brutality employed by the killer in inflicting numerous wounds on the victim. *See State v. Porterfield,* 746 S.W.2d 441 (Tenn.1988); *State v. McNish,* 727 S.W.2d 490 (Tenn. 1987).

■ Prior to offering the testimony of the volunteer chaplain of the Knox County Jail, defendant sought a ruling by the trial judge that the State be prohibited from making any reference to the fact that defendant had been on death row. Defendant intended to prove by the witness Chamberlin that defendant had become a Christian while in prison and had been baptized just before leaving the Knox County Jail for the State prison in Nashville; that the witness had visited and worshipped with defendant at the penitentiary in Nashville and, in short, that defendant had compiled an impressive record of worship for a period of about six years. The State's position was that such testimony presented the issue of whether defendant had experienced a real "change of heart" or was engaging in manipulative conduct and that whether defendant was under a sentence of death at times relevant to the change was a critical factor. The trial judge ruled that he would not limit the State's cross-examination as requested by defendant.

Defendant was granted permission to examine Chamberlin out of the presence of the jury. After completing the direct examination, defendant renewed his contention that Chamberlin's direct testimony should be admitted and the State prohibited from making any reference to the fact that defendant was under a sentence of death when he was baptized. The State had no objection to the admissibility of Chamberlin's direct testimony and agreed that they would avoid any mention of death row, but the prosecutors did not agree that they would avoid bringing out the fact that at the time he was baptized he had been sentenced to death by the jury in the 1982 trial. The trial judge ruled that he would not limit the State's cross-examination so

as to keep that information from the jury. Defendant then elected not to examine Chamberlin in the presence of the jury, but preserved his objection to the trial judge's action as precluding the presentation of highly relevant evidence of a mitigating factor.

Although the issue has not been directly before us, it is clearly improper, as a general rule, to inform a jury at a resentencing hearing that at a prior trial defendant was sentenced to death. *Cf. State v. Adkins,* 725 S.W.2d 660 (Tenn.1987).

On the other hand, where defendant insists upon introducing proof of a religious conversion, the State is entitled to probe the circumstances of the conversion and where such change of heart occurs after a jury has sentenced defendant to death, that fact is clearly relevant and admissible.

In this case, defendant elected not to introduce proof of his baptism and new religious status and thus no evidence of the sentence of death imposed by the first jury was presented to the jury. We do not have before us the exact manner in which the State would have introduced evidence of the prior sentence, and the entire issue is speculative. We reject defendant's insistence that the trial judge's prospective ruling was erroneous and prevented his introduction of a mitigating circumstance.

■ Defendant alleges error in the trial judge's refusal to charge the mitigating circumstance in T.C.A. § 39–2–203(j)(2) which reads as follows:

The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance.

Defendant says Judge Ford, who presided over the 1982 trial, in response to a question in the Supreme Court Rule 12 Report, found evidence that would justify submission of that mitigating circumstance.

This Court has held that only those mitigating circumstances that are raised by the evidence are to be expressly charged. *See State v. Hartman,* 703 S.W.2d 106 (Tenn. 1985); *State v. Buck,* 670 S.W.2d 600 (Tenn.1984). Whether or not there was

evidence to support mitigating circumstances (j)(2) at the 1982 trial has no relevance to the 1987 sentencing hearing. At the 1987 hearing there was evidence that as a result of intoxication from alcohol or drugs, defendant's appreciation of the wrongfulness of his conduct may have been impaired, and the trial judge gave the appropriate charge. Our careful examination of the record reveals no evidence that defendant was "under the influence of extreme mental or emotional disturbance;" the trial judge correctly rejected defendant's request for a charge on T.C.A. § 39–2–203(j)(2).

■ Defendant insists that several comments made by the prosecutor in closing argument were improper and reversible error. The following statement by the prosecutor is said to be a comment on defendant's failure to testify:

> The young, streetwise, not innocent like Lee Standifer, David Miller, the person who sat in front of you this whole trial and showed you what his opinion of this trial was.

This was clearly rebuttal argument directed to defense counsel's earlier argument that defendant had shown remorse on several specific occasions that counsel asked the jury to recall. We do not think the statement can be fairly characterized as a comment on defendant's failure to testify.

■ The prosecutor referred to defendant as "perverted." That was an improper comment, its only possible justification being the fact that defendant had had a homosexual relationship with his landlord. The prosecutor could have appropriately used the word "depraved" based upon defendant's undisputed treatment of the victim, and that was the context in which "perverted" was used. This error was harmless beyond a reasonable doubt.

In urging the jury to "protect the Lee Standifers of the world", defendant says the prosecutor impermissibly introduced a comparison of the worth of character of defendant Miller to that of the victim, in violation of *Booth v. Maryland, supra.* The specific statements complained of fall far short of the "victim impact" statements in *Booth* and far short of approaching reversible error.

■ Defendant asserts that the evidence was insufficient to support the aggravating circumstance that the murder was especially heinous, atrocious, etc. The proof shows that the defendant killed the victim by striking her twice with great force with a firepoker and indicates that the blows were so hard that they bent the poker. Prior to this defendant had handled the victim with sufficient roughness to bruise her arms and legs. There was no evidence as to how long it took the victim to die. Regardless of whether the proof supports torture, the jury could fairly infer that the vicious and massive stab wounds occurred so soon after death that the murderer possessed the same depravity of mind at the time of the killing. *See State v. Williams,* 690 S.W.2d 517, 530 (Tenn.1985). *See e.g., State v. Melson,* 638 S.W.2d 342, 367 (Tenn. 1982).

There is no merit to this issue.

Defendant insists that the death sentence is not the proper penalty in this case, because of defendant's deprived and abused childhood, his alcoholism and other factors. Those matters were all fairly presented to the jury and it was for the jury to say whether a life sentence or death was the appropriate punishment. We have carefully reviewed the sentence of death to determine whether it is excessive or disproportionate to the penalty imposed in similar cases and we find the sentence to be appropriate considering both the nature of the crime and the defendant. *See* T.C.A. § 39–2–205; *State v. McNish,* 727 S.W.2d 490 (Tenn.1987); *State v. House,* 743 S.W.2d 141 (Tenn.1987); *State v. Barnes,* 703 S.W.2d 611 (Tenn.1985); *State v. Coe,* 655 S.W.2d 903 (Tenn.1983); and *State v. Melson,* 638 S.W.2d 342 (Tenn.1982).

Defendant lists five unbriefed issues which we have considered and found to be without merit.

The sentence of death is affirmed. The sentence will be carried out as provided by law on the 24th day of July, 1989, unless

stayed by proper authority. Costs are taxed to defendant.

HARBISON, C.J., and COOPER, DROWOTA and O'BRIEN, JJ.