IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

JUNE 1995 SESSION

FILED

December 28, 1995

Cecil Crowson, Jr.

Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | NO. 02C01-9503-CC-00059 |
| | ) | |
| Appellee, | ) | GIBSON COUNTY |
| | ) | |
| V. | ) | HON. DICK JERMAN, JR., |
| | ) | JUDGE |
| | ) | |
| **CYNTHIA ROBERSON and** | ) | (First Degree Murder) |
| **RHODNEY ROBERSON,** | ) | |
| | ) | |
| Appellants. | ) | |

DISSENTING OPINION

I agree with the majority's finding that the evidence was sufficient to support the first degree murder conviction. In light of the overwhelming evidence of guilt, however, I do not find sufficient error to warrant reversal. I also disagree with the majority in: (1) finding reversible error as to charging the jury with parole eligibility; (2) finding a violation of Bruton v. United States, 391 U.S. 123 (1968); and (3) finding that the judge abused his discretion in admitting the autopsy photograph.

I

I agree with the majority's conclusion that the case sub judice arose prior to the effective date of Tenn. Code Ann. § 40-35-201(b)(2)(A)(i) and (ii) (1994 Supp.) which permits instructing a jury as to parole eligibility. I do not find, however, that the trial judge's instruction tainted the jury's finding of guilt. In State v. Farris, 535 S.W.2d 608 (Tenn. 1976), the Court held that charging a jury with the possibility of parole "bears only upon the question of punishment and has no relation to the jury's finding of guilt or innocence." Id. at 614.

In Farris, the Court initially reduced the jury's sentences to the statutory minimum of the convicted offenses, subject to the state's consent. If the state did not consent to the sentence reduction, the Court ordered remand for a new trial on both the issue of guilt and sentencing. On petition to rehear, however,

the Court "recede[d] from [their] original opinion in this particular." The Court's modification held that if the state chose not to consent to the sentence reduction, the cause would be remanded solely for the purpose of resentencing and not for retrying the issue of guilt. Accordingly, the jury's convictions in Farris, as modified, were allowed to remain intact whether or not a remand for sentencing was necessary.

In the case sub judice, I would hold that instructing the jury as to parole eligibility was harmless error as consideration of parole eligibility is only impermissible during sentencing.[1] The trial judge sentenced the appellants. The jury determined their guilt. Whether the trial judge may have improperly considered parole eligibility in sentencing the appellants is not the issue with which we are faced. Accordingly, unless the majority is, in effect, holding such considerations unconstitutional, I do not find authority supporting reversal on this issue.

II

The majority has concluded that Bruton v. United States, 391 U.S. 123 (1968), was violated during the following cross-examination of appellants' witness:

> Q. Isn't it true, Mr. Lenz, that the reason you were so curious about the condition of your daughter [sic] -- the reason that you were curious enough to roll a dead body over and look at her back that you were concerned that somebody had beaten your granddaughter.

> A. No, sir, I wasn't. . . . My granddaughter has never been beaten by anybody. She never even had a whipping.

> Q. She's never had a what?

> A. A whipping -- a spanking.
> . . .

> Q. She's never had a spanking?

---

[1] The legislature apparently agrees that consideration of parole eligibility is only improper during sentencing. Otherwise, Tenn. Code Ann. § 40-35-201(b)(2)(A)(i) would not have been drafted to permit juries to consider such factors in their determinations of guilt. Note also, that the above legislation is in apparent harmony with Farris because juries no longer issue sentences in non-capital cases.

A. She's never had a spanking. She had a spat but not a spanking.

Q. Can you explain then why Cynthia Roberson, your daughter, would say that when Rhodney spanked her that he was really rough with her?

The statement was offered either as rebuttal evidence or for impeachment purposes and not as substantive evidence.[2] For purposes of impeachment, it was irrelevant whether or not Rhodney actually spanked the child roughly. The statement was offered to prove that the witness was on notice that the child had been spanked, not "spat." If the witness admitted to having heard this statement, whether or not a true statement, his credibility, in testifying that the child had never been spanked, would have been impeached.

Hearsay is an out of court statement offered to prove its truth. Had the statement been offered to prove that appellant spanked his child roughly, a hearsay problem attaches. The statement is not hearsay, however, if offered to prove that the witness was aware that appellant spanked his child. Since the statement might have been relevant for both impeachment and substantive purposes, defense counsel could have requested and received a limiting instruction.

Due to counsel's failure to make a timely and specific objection or request a limiting instruction, counsel "failed to take whatever action was reasonably available to prevent or nullify the harmful effect" of any error that may have occurred. Tenn. R. App. P., Rule 36(a). Had defense counsel made a proper specific objection and then requested a limiting instruction, the trial judge could have "carefully explained that [Mrs. Roberson's] statement introduced by the state could be considered for impeachment purposes only and did not qualify as

_____

[2] The proper form of the question would be "Have you heard your daughter say . . ." or "Isn't it true that your daughter told you . . . ." Had defense counsel made a timely specific objection, the question could have been restated. However, defense counsel failed to make either a specific or timely objection.
      Regardless, we look at substance over form. I find that the question as framed was probative to whether or not the witness' testimony was credible.

substantive evidence." State v. Zirkle, No. 03C01-9303-CR-00094, slip op. at 36 (Tenn. Crim. App. Feb. 13, 1995).

Bruton is violated only when the entry of a non-testifying co-defendant's statement implicates another defendant and violates the latter's right to confrontation. Bruton, 391 U.S. at 127. The rule is designed to avoid presentation of evidence without affording the jury an opportunity to evaluate the context in which the statement was made and the veracity of its maker. Douglas v. Alabama, 380 U.S. 415, 418 (1965).

Because I find that the statement was not offered as substantive evidence, I find no violation of Bruton. The statement was offered for rebuttal purposes and, therefore, neither the context in which the statement was made nor the veracity of its maker are at issue. Salinger v. United States, 272 U.S. 542 (1926). See also Tennessee v. Street, 471 U.S. 409 (1985) (holding detailed statement by non-testifying co-defendant admissible for rebuttal purposes). Accordingly, I disagree with the majority and find no reversible Bruton error.[3]

III

As to the admissibility of the autopsy photograph, the appellants have not shown a clear abuse of discretion that affected the trial's result. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978); Tenn. R. App. P., Rule 36(b). The admissibility of a photograph rests within the sound discretion of the trial judge and should not be overturned unless it affirmatively appears that the admission has affected the results of the trial. State v. Melson, 638 S.W.2d 342, 365 (Tenn. 1982); see also United States v. Brady, 595 F.2d 359, 361 (6th Cir. 1979). "The trend of modern authority is to vest more discretion in the trial court

---

[3] I find it doubtful whether this statement, even if it were inadmissible hearsay, would rise to the level of a reversible Bruton error. However, upon finding the statement admissible for impeachment purposes only, the issue is moot.

4

in this respect." <u>Banks</u>, 564 S.W.2d at 949. Moreover, we cannot substitute our judgment for that of the trial court. <u>State v. Weaver</u>, No. 4 (Tenn. Crim. App. Jan. 3, 1985, Jackson).

I respectfully dissent not because I disagree with the majority's finding that the photograph was gruesome, but because I feel that both the applicable legal standard and case law[4] mandate affirming the trial court's ruling on this issue. Otherwise, we risk creating ambiguity and arbitrariness in the established standard.

I feel that the majority has incorrectly stated the applicable legal standard in the negative. The majority states that "*we are unable to say* that the undue prejudicial effect of this gruesome photograph *did not affect* the jury's finding of guilt." I read the standard for overturning as requiring an **<u>affirmative</u>** finding that:

(1) the trial judge abused his or her discretion, and

(2) that the admission affected the results of the trial.

---

[4] <u>See</u> <u>State v. Stout</u>, 666 S.W.2d 80, 86 (Tenn. Crim. App. 1983) (upholding introduction of photographs showing numerous bruises on victim's body to show severity of beating that victim received); <u>State v. Harbison</u>, 704 S.W.2d 314 (Tenn. 1986) (finding gruesome color photographs admissible which vividly depicted injuries caused by savage beating); <u>State v. Miller</u>, 771 S.W.2d 401 (Tenn. 1989) (permitting introduction of crime scene and morgue photographs relevant to show brutality and force employed by killer in inflicting numerous wounds on victim); <u>see</u> <u>also</u> <u>State v. Brown</u>, 756 S.W.2d 700 (Tenn. Crim. App. 1988) (affirming introduction of photograph depicting gash in victim's skull and brain matter on ground near victim); <u>State v. Weaver</u>, No. 4 (Tenn. Crim. App. Jan. 3, 1985, Jackson) (affirming introduction of photograph of victim sitting in chair with top of head blown completely off); <u>State v. Garland</u>, 618 S.W.2d 176, 183-84 (Tenn. Crim. App. 1981) (holding photograph of charred body admissible); <u>State v. Wright</u>, 618 S.W.2d 310, 319 (Tenn. Crim App. 1981) (finding photographs of body and head showing multiple stab wounds admissible); <u>State v. Driver</u>, 634 S.W.2d 601, 607-08 (Tenn. Crim. App. 1981) (admitting photographs of various bones of victim); <u>State v. Dubose</u>, No. 01C01-9405-CC-00160 (Tenn. Crim. App. Aug. 25, 1995) (permitting introduction of autopsy photographs).

The only reported case I could find reversing a trial judge's exercise of discretion, due to prejudicial impact, in admitting a photograph was <u>Gladson v. State</u>, 577 S.W.2d 686 (Tenn. Crim. App. 1978). However, I feel that <u>Gladson</u> is readily distinguishable from the case <u>sub</u> <u>judice</u>. <u>See</u> <u>infra</u>.

To overturn in the absence of an affirmative finding of abuse of discretion[5] and prejudice, we merely supplant the trial judge's judgment with that of our own. Therefore, if we are unable to conclude, as the majority confesses, that prejudice occurred, we must affirm.

Moreover, the majority concedes that the evidence of guilt was "clearly sufficient to support the conviction of both appellants for first-degree child abuse murder." I feel that case law mandates reversal only when the introduction of photographs has tipped the scales. Accordingly, when the evidence of guilt is overwhelming, as in this case, I feel that reversal is inappropriate absent a clear showing of prejudice. See State v. Robinson, 622 S.W.2d 62, 66 (Tenn. Crim. App. 1980) (finding error in admitting photographs irrelevant to any disputed issue, however, holding that "their admission was harmless error in view of the overwhelming evidence of the defendants' guilt").

The majority cites Gladson v. State, 577 S.W.2d 686 (Tenn. Crim. App. 1978), as authority for finding error in the admission of an autopsy photograph. However, I would distinguish Gladson on the basis that Gladson was willing to concede that he killed the victim. At trial, Gladson merely asserted he acted in self-defense. In that context, the autopsy photographs were no longer necessary to establish cause of death. Furthermore, the autopsy photographs were not germane to the only disputed issue, self-defense. Therefore, the only purpose for their admission was to inflame the jury.[6]

_____

[5] See State v. Stephenson, 878 S.W.2d 530 (Tenn. 1994) (holding trial court's decision regarding admissibility of photographs will not be reversed absent clear showing of abuse of discretion); State v. Harbison, 704 S.W.2d 314 (Tenn. 1986) (stating ruling will not be overturned absent clear showing of abuse of discretion).

[6] In Gladson, this Court seemed concerned about the prejudicial impact of the autopsy photographs when the only remaining disputed issue was whether defendant acted in self-defense. Accordingly, I find that the appropriate tests are as follows:

1. When a photograph is not germane to any disputed issue, we affirm only upon an affirmative finding that prejudice has not occurred.

6

Unlike Gladson, we are not confronted with appellants willing to concede they killed their child. See also State v. Norris, 874 S.W.2d 590 (Tenn. Crim. App. 1993) (distinguishing Gladson on basis defendant would not stipulate as to element of serious bodily injury). At trial, in the case sub judice, the cause of death was both a material and disputed issue. The state alleged that the child's death was a direct result of a fatal blow during the perpetration of aggravated child abuse. Appellants, however, denied the allegations of child abuse. They allege the child's fatal injuries occurred during accidental falls.[7]

Appellants were charged with first degree murder for the "killing of [their child] in the perpetration of or attempt to perpetrate . . . aggravated child abuse." Tenn. Code Ann. § 39-13-202 (1993 Supp.). The autopsy photograph depicted internal bruising which was substantive evidence of aggravated child abuse. By statute, a finding of aggravated child abuse is a requisite element of the appellants' first degree murder charge.[8] Accordingly, the photograph was probative to a requisite element of the state's case.

The photograph gains even more relevance in its use as rebuttal evidence. At trial, appellants denied allegations of child abuse and introduced witnesses who testified that they had not seen visual signs or evidence of child abuse. The appellants also proffered evidence that their child, prior to her death, had fallen against a fireplace hearth and hit her head.

---

2. When a photograph is relevant to a disputed issue, we reverse only upon an affirmative finding that prejudice has occurred.

[7] Unlike Gladson, the trial court was not confronted with deciding the sole issue of whether an affirmative defense to the killing was applicable.

[8] The majority finds the photograph irrelevant apparently because the photograph depicts injuries in addition to the injury directly causing death. I, however, feel that the photograph depicting the child's multiple head injuries is relevant to show the brutality of the attack and malice. See State v. Brown, 836 S.W.2d 530 (Tenn. 1992) (affirming admission of photographs as evidence of brutality of attack and extent of force used against victim from which jury could infer malice, either express of implied); See also State v. Smith, 868 S.W.2d 561 (Tenn. 1993) (holding photographs go to premeditation, malice, and intent because of obvious multiplicity of wounds and obvious intent of whoever was inflicting these wounds).

The state introduced the autopsy photograph to rebut appellants' defenses and prove the statutory elements of the offense.  See State v. Street, 768 S.W.2d 703 (Tenn. Crim. App. 1988) (finding photographs relevant to establishing brutality of attack and intent which were proper subjects for jury determination).  Albeit gruesome, the autopsy photograph was relevant to:

1.  rebutting the appellants' defense of never having physically abused their child;

2.  rebutting the appellants' witnesses' testimony that the child had  never been nor exhibited any signs of physical abuse (the photograph      clearly depicts the child's multiple head injuries which would have been      concealed by the child's hair and, therefore, not readily apparent to the      appellants' witnesses);

3.  revealing the extent, number, and location of the child's head injuries to rebut appellants' defense that the child was merely bruised and injured by falling twice in the bathtub and once against the fireplace hearth; and

4.  assisting in understanding the testimony of the medical examiner.  See State v. Debuse, No. 01C01-9405-CC-00160 (Tenn. Crim. App. Aug. 25, 1995) (holding autopsy photograph of internal organs, although an unpleasant sight, was admissible where photograph was helpful in understanding testimony of medical examiner).

The appellants should not be rewarded for inflicting injuries to their child that were concealed by the child's hair.  In the absence of any outward manifestations of the injuries to the child's head, I find both necessity and relevance in the autopsy photograph.  The photograph clearly depicted that the child had sustained numerous blows to her head which would not have been readily visible to appellants' witnesses.  This evidence of repeated blows to the head also supports a jury finding that the lacerated duodenum occurred during the perpetration of aggravated child abuse.  State v. Bordis, 905 S.W.2d 214

8

(Tenn. Crim. App. 1995) (finding photographs relevant to illustrate signs of child neglect or abuse in proving deliberate and willful killing).

Banks recognizes the "policy of liberality in the admission of evidence in both civil and criminal cases, including the admission of photographs." Id. Furthermore, as the current standard mandates, we must not overturn absent an affirmative showing that the trial judge abused his discretion and the admission affected the results of the trial. State v. Melson, 638 S.W.2d 342, 365 (Tenn. 1982). I find no abuse of discretion. Moreover, in light of the overwhelming evidence of the appellants' guilt, I would also hold that "the photograph was [neither] determinative evidence nor affected the results of the trial." See State v. Weaver, No. 4 (Tenn. Crim. App. Jan. 3, 1985, Jackson) (holding photograph of woman with top of head blown off just above eyes not determinative evidence nor effect-resulting where evidence of guilt overwhelming).[9]

For the foregoing reasons I respectfully dissent.

_____
PAUL G. SUMMERS, JUDGE

---

[9] I would also note that the autopsy photograph in the case sub judice is dehumanized. Upon a cursory examination of the photograph, I was unable to ascertain exactly what photograph was depicting. Moreover, surgical procedures on educational television channels have depicted a child's scalp pulled down in precisely the same manner during a reconstructive surgical procedure to correct malformations in the skull caused by birth defects.

The photograph in Weaver, however, was more grizzly and disturbing as it clearly depicted a woman in a flowery dress sitting in a chair with the top of her head lying on her shoulder. A cursory examination of this photograph leaves little doubt as to what the viewer is viewing.