BIRCH, ADOLPHO, J.,
concurring and dissenting.
I concur in the conclusion of the majority that Faulkner’s conviction should be affirmed. As to the sentence of death, however, I continue to adhere to my views, previously expressed in a long line of dissents, that the comparative proportionality *65 review protocol currently embraced by the majority is inadequate to shield defendants from the arbitrary and disproportionate imposition of the death penalty. See Tenn. Code Ann. § 39-13-206(c)(l)(D) (1995 Supp.). I have repeatedly expressed my displeasure with the current protocol since the time of its adoption in State v. Bland, 958 S.W.2d 651 (Tenn.1997). See State v. Robinson, 146 S.W.3d 469, 529 (Tenn.2004) (Birch, J., concurring and dissenting); State v. Leach, 148 S.W.3d, 42, 68 (Tenn.2004) (Birch, J., concurring and dissenting); State v. Davis, 141 S.W.3d 600, 632 (Tenn.2004) (Birch, J., concurring and dissenting); State v. Berry, 141 S.W.3d 549, 589 (Tenn.2004) (Birch, J., concurring and dissenting); State v. Holton, 126 S.W.3d 845, 872 (Tenn.2004) (Birch, J., concurring and dissenting); State v. Davidson, 121 S.W.3d 600, 629-36 (Tenn.2003) (Birch, J., dissenting); State v. Carter, 114 S.W.3d 895, 910-11 (Tenn.2003) (Birch, J., dissenting); State v. Reid, 91 S.W.3d 247, 288-89 (Tenn.2002) (Birch, J., concurring and dissenting); State v. Austin, 87 S.W.3d 447, 467-68 (Tenn.2002) (Birch, J., dissenting); State v. Stevens, 78 S.W.3d 817, 852 (Tenn.2002) (Birch, J., concurring and dissenting); State v. McKinney, 74 S.W.3d 291, 320-22 (Tenn.2002) (Birch, J., concurring and dissenting); State v. Bane, 57 S.W.3d 411, 431-32 (Tenn.2001) (Birch, J., concurring and dissenting); State v. Stout, 46 S.W.3d 689, 720 (Tenn.2001) (Birch, J., concurring and dissenting); Terry v. State, 46 S.W.3d 147, 167 (Tenn.2001) (Birch, J., dissenting); State v. Sims, 45 S.W.3d 1, 23-24 (Tenn.2001) (Birch, J., concurring and dissenting); State v. Keen, 31 S.W.3d 196, 233-34 (Tenn.2000) (Birch, J., dissenting). As previously discussed, I believe that the three basic problems with the current proportionality analysis are that: (1) the proportionality test is overbroad,[1] (2) the pool of cases used for comparison is inadequate,[2] and (3) review is too subjective.[3] I have previously discussed, in depth, my perception that these flaws undermine the reliability of the current proportionality protocol. See State v. Godsey, 60 S.W.3d at 793-800 (Birch, J., concurring and dissenting). I continue to adhere to my view that the current comparative proportionality protocol is woefully inadequate to protect defendants from the arbitrary or disproportionate imposition of the death penalty.[4] Accordingly, I respectfully dis *66 sent from that portion of the majority opinion affirming the imposition of the death penalty in this ease.

APPENDIX

(Excerpts from the Court of Criminal Appeals’ Decision)
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 6, 2003 Session
STATE OF TENNESSEE v. ROBERT FAULKNER
Direct Appeal from the Criminal Court for Shelby County, No. 99-07635; Chris Craft, Judge
No. W2001-02614UCCA-R3-DD—
Filed September 26, 2003
Thomas T. Woodall, J., delivered the opinion of the court, in which David G. Hayes and John Everett Williams, JJ., joined.
OPINION
[Deleted: Factual Background]
I.Evidence of Diminished Capacity
[Deleted]
II. Introduction of Photographs of Homicide Victim
Seven color photographs were admitted during the guilt phase of the Defendant’s trial and seven color photographs were admitted during the sentencing phase of the Defendant’s trial. During the guilt phase, the following photographs were admitted:
1.Exhibit # 3: Color photograph of the victim’s body lying on the floor near a dresser. Blood is visible on the victim’s head and on the carpet beneath the victim’s body.
2. Exhibit #33: Color photograph of the victim’s head during the autopsy. Photo depicts the number and position of wounds to the victim’s head.
3. Exhibit # 34: Color autopsy photograph revealing close-up of “cleaned-up” wound to victim’s head. Wound showed repeated blows but was not accompanied with pooled or running blood.
4. Exhibit # 35: Color autopsy photograph of victim’s facial features, specifically the nose and mouth region. Photo revealed “a definite gap or dent or cut in the bottom lip.”
5. Exhibit # 36: Color autopsy photograph of victim’s facial features, specifically the mouth and chin region. Tape measure indicated size of wounds.
6. Exhibit #37: Color autopsy photograph of victim’s facial features, specifically the upper mouth, nose, and left eye region. Photo indicated number of wounds to facial area.
7. Exhibit # 41: Color autopsy photograph of front view of victim’s head. Photo depicted severity of facial wounds inflicted upon the victim.
During the penalty phase, the following photographs were admitted:
1. Exhibit #47: Color photograph of victim’s body lying on bedroom floor.
2. Exhibit #48: Color photograph of close-up of victim’s body as found on bedroom floor.
3. Exhibit #49: Color photograph of victim’s body lying on bedroom floor.
4. Exhibit #50: Color photograph of victim’s body lying on bedroom floor. *67 Different angle showing little or no blood spatter on right side of victim’s body.
5. Exhibit # 56: Color photograph depicting blood stain on carpet.
6. Exhibit # 60: Color photograph of victim’s body lying on bedroom floor. Photograph indicated the presence of blood clots on victim’s person and on carpet.
7. Exhibit # 61: Color photograph of close-up of victim lying on bedroom floor. Photograph indicated the presence of blood clots or spatter on dresser behind victim’s body.
The Defendant complains that the trial court erred in admitting these photographs stating that “[t]he introduction of gruesome photographs of the victim violates the Defendant’s rights under the federal and state constitutions, as well as the Tennessee Rules of Evidence.” The State responds that “the relevance of these photographs was not substantially outweighed by the danger of unfair prejudice,” and, therefore, the trial court did not err by admitting the photographs.
Tennessee courts follow a policy of liberality in the admission of photographs in both civil and criminal cases. See State v. Banks, 564 S.W.2d 947, 949 (Tenn.1978) (citations omitted). Accordingly, “the admissibility of photographs lies within the discretion of the trial court” whose ruling “will not be overturned on appeal except upon a clear showing of an abuse of discretion.” Id.; see also State v. Hall, 8 S.W.3d 593, 602 (Tenn.1999), cert. denied, 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000). Notwithstanding, a photograph must be found relevant to an issue that the jury must decide before it may be admitted into evidence. See State v. Vann, 976 S.W.2d 93, 102 (Tenn.1998), cert. denied, 526 U.S. 1071, 119 S.Ct. 1467, 143 L.Ed.2d 551 (1999); State v. Braden, 867 S.W.2d 750, 758 (Tenn.Crim.App.), perm. to appeal denied, (Tenn.1993) (citation omitted); see also Tenn. R. Evid. 401. Photographs of a corpse are admissible in murder prosecutions if they are relevant to the issues at trial, notwithstanding their gruesome and horrifying character. Additionally, the admissibility of evidence at a capital sentencing hearing is controlled by section 39-13-204(c), Tennessee Code Annotated, which allows the admission of any evidence “the court deems relevant to the punishment ... regardless of its admissibility under the rules of evidence.” See Hall, 8 S.W.3d at 601. In essence, section 39-13-204(e) permits introduction of any evidence relevant to sentencing in a capital case, subject only “to a defendant’s opportunity to rebut any hearsay statements and to constitutional limitations.” See Hall, 8 S.W.3d at 601.
Notwithstanding this broad interpretation of admissibility, evidence that is not relevant to prove some part of the prosecution’s case should not be admitted solely to inflame the jury and prejudice the defendant. Banks, 564 S.W.2d at 950-51. Additionally, the probative value of the photograph must outweigh any unfair prejudicial effect that it may have upon the trier of fact. Vann, 976 S.W.2d at 103; Braden, 867 S.W.2d at 758; see also Tenn. R. Evid. 403. In this respect, we note that photographs of a murder victim are prejudicial by their very nature. However, prejudicial evidence is not per se excluded; indeed, if this were trae, all evidence of a crime would be excluded at trial. Rather, what is excluded is evidence which is “unfairly prejudicial,” in other words, that evidence which has “an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.” See Vann, 976 S.W.2d at 103 (citations omitted).

*68
A. Photographs at Guilt Phase

Exhibit number 3 is a photograph depicting the location of the victim’s body in relation to the dresser. The defense objected stating that sketches of the crime scene were available to show the location of the victim’s body and that the photograph was too graphic. The trial court found that “the probative value of this photograph is not outweighed by any unfair prejudice. It’s not, in my mind, other than showing someone dead who obviously has been beaten around the head, it’s not inflammatory.” Five other photographs that were more graphic were excluded by the trial court.
Exhibit numbers 33 though 37 and exhibit number 41 are all photographs of the victim taken during the autopsy. At trial, the State asserted that the photographs were necessary to show different aspects of the examination performed by Dr. Smith. The prosecution stated that the photographs were also necessary as evidence of repeated blows, or proof of premeditation, and not that a single blow was struck in anger. Because the photographs of the wounds were taken during the autopsy, the wounds had been “cleaned up” as much as possible. There was no fresh blood and the photographs were basically “scientific” photographs.
The trial court made the following rulings with regard to these photographs:
This [exhibit # 33] shows a wound. Apparently, her scalp has been shaved on the right top side of her head to show the wound there. Other than having a little blood in her ear, that seemed to pool in the ear, this picture is a cleaned up picture.
[[Image here]]
Well, I find that this will help assist the jury. It’s very probative as to the position and the repeated wounds, and it’s been cleaned up. And there’s nothing gross or heinous about it other than the obvious wound that was inflicted. So I’m going to allow number nine [exhibit #33].
Well, for the record, photograph number twelve [exhibit # 34] is a scalp shaved showing a wound or, apparently, several wounds.... Because it’s a close up showing the obvious repeated blows to that area, I’m going to allow this. It’s been cleaned up. And although the wound is red, there is no running blood or pooled blood, so I’m going to allow picture 12.
All right. Looking at picture eight [exhibit # 35] in it[ ]s totality, there’s nothing gross or heinous about it. It’s much less graphic than number seven. There is a definite gap or dent or cut in the bottom lip that you can see in this picture, you can’t in the other one. I don’t think there’s any additional unfair prejudicial value at all to number eight, so I’m going to allow number eight also. All right. That is — covers the same material that [exihibit # 35] covers .... and that’s cumulative with [exhibit #35]....
He has a ruler next to it.
[[Image here]]
Well, it’s — before it was cumulative, but because it has the ruler, I’m going to do this, then ... we’re going to ... allow this one as well....
Well, this photograph [exhibit # 37] is a close up of the nose and her left eye and the left side of her mouth, and that shows other things that I didn’t see in any other pictures. One, it shows a cut to her nose, to the left side of her nose; it shows two to three cuts to the top left of her mouth, and also a definite cut or blow to the left eye. There’s a line on the eyelid. Although her eyelid is par *69 tially open, and up at the top — I mean, up in the right eye area, you can barely start to see a wound there. There’s nothing about this picture in my mind that’s inflammatory, and for that reason, it’s probative, and I’m going to allow it.
All right. Well, of all 13 pictures, this is the one that is the most unpleasant to look at because it shows her frontal face., it shows the area where her right eye would be as just a big dent in her head. It show a denture — a partial denture — in her mouth.... Her face has been cleaned up and there’s no blood. There are open wounds, but there’s no pools of blood or dripping blood, and it shows repeated — what seems to me numerous, repeated blows to the front of her face. Which, in my mind ... would be very probative of the fact that she just laid on the ground. Apparently, if someone hits her in the face like this to cause this wound, her body would have moved. Laying on the ground with someone standing over her, hitting her repeatedly with an object or objects, which is extremely probative of premeditation. The main issue in this case ... is whether or not the defendant could form intent or premeditation, or whether this was just a knowing killing. This is a 3-D picture ... you can see that not only was she struck repeatedly, but from different angles which would take some time to do — to do this damage. And I find that it’s cleaned up. And other than being unpleasant, because we have a person who has been killed by these wounds, I don’t think that it’s being introduced as inflammatory. Any unfair prejudice in this picture over a diagram would be slight, and it does not at all, I think, overcome the extreme probative value of it....
While Defendant admitted to the murder of his wife, he claimed that he acted in a state of passion and thus, was not guilty of first-degree premeditated murder. The issue before the jury was whether the killing resulted from a state-of-passion produced by adequate provocation or whether the killing was premeditated. The purpose for introducing photographs into evidence is to assist the trier of fact. As a general rule, the introduction of photographs helps the trier of fact see for itself what is depicted in the photograph. State v. Griffis, 964 S.W.2d 577, 594 (Tenn.Crim.App.), perm. to appeal denied, (Tenn.1997).
In State v. Banks, 564 S.W.2d at 947, our supreme court set forth several factors to be considered by the trial court in determining admissibility of photographs, including their value as evidence, whether they are needed to establish a prima facie case and whether, and to what extent, they are “gruesome.”
The only seriously contested issue in the case was the degree of homicide. The State relied heavily upon the nature and extent of injuries inflicted upon the victim to establish a prima facie case of first degree murder. While repeated blows are not alone sufficient to establish premeditation, see State v. Brown, 836 S.W.2d 530, 542 (Tenn.1992), the photographs were relevant to the critical issue of premeditation and were not inflammatory. The photographs, demonstrating repeated blows to the head of the victim, were relevant to show the element of premeditation in this first degree murder case. There is little dispute that the photographs are unpleasant and gruesome. However, they are highly relevant and probative to show that Defendant used a weapon upon an unarmed victim, the repeated blows upon the victim, and the brutality of the attack. Our supreme court has held that photo *70 graphs of the victim may be admitted “as evidence of the brutality of the attack and the extent of force used against the victim, from which the jury could infer malice, either express or implied.” State v. Goss, 995 S.W.2d 617, 627 (Tenn.Crim.App.1998) (citing Brown, 836 S.W.2d at 551; see also State v. Smith, 868 S.W.2d 561, 576 (Tenn.1993) (trial court did not abuse its discretion by admitting a photograph of the victim when the trial court stated that the photograph was relevant to show “ ‘premeditation, malice and intent because of the multiplicity of these wounds and an obvious intent of whoever was inflicting these wounds.’ ”)). In this case, the State was required to prove that the killing was intentional. See Tenn.Code Ann. § 39-13-202(a)(1). The Defendant claims that he acted out of passion. The photographs of the victim demonstrate that the attack was brutal and non-relenting. The primary effect of seeing the photographs is not so much to inflame the viewer as to reveal to the viewer that, whoever inflicted the injuries upon the victim did so deliberately and premeditatively, striking the victim multiple times. The photographs depict a savage beating. Although they are admittedly gruesome, they give a better description of the nature and extent of the wounds than the testimony of the medical examiner. Under the principles expressed in State v. Banks, 564 S.W.2d 947 (Tenn.1978), we find that the trial judge did not abuse his discretion in admitting these photographs.

B. Photographs at Penalty Phase

Exhibit numbers 47 through 50 and exhibit numbers 56, 60 and 61 are photographs of the victim’s body as it was discovered at the crime scene. Exhibit number 47 depicts the wounds to the victim’s head, but also movement of the victim’s head from right to left. The trial court found this photograph probative to prove the heinous, atrocious, cruel aggra-vator. Exhibit 49 is the same photograph as exhibit 47. However, exhibit 49 contains two ink markings referencing blood spatter that exhibit 47 lacks. Exhibits number 48 and 50 were admitted because (1) number 48 was a close-up photograph and (2) number 50 was “far back showing the other side of the body with no blood on it.” Exhibit 56 depicts a pool of blood in the carpet. The trial court found this photograph admissible as “it’s not gruesome.” Exhibits 60 and 61 were admitted to show the duration of the assault demonstrating the various aspects of blood clotting. The court found that “there’s nothing in these photographs the jury would not have already have seen from earlier photographs.” On appeal, the Defendant complains that the admission of these photographs was error in that (1) the photographs were more prejudicial than probative and (2) the photographs were cumulative.
Photographs are not necessarily rendered inadmissible because they are cumulative of other evidence or because descriptive words could be used. See Collins v. State, 506 S.W.2d 179, 185 (Tenn.Crim.App.1973). Photographs must be relevant to prove some part of the prosecution’s case and must not be admitted solely to inflame the jury and prejudice them against the defendant. Banks, 564 S.W.2d at 951; see Tenn. R. Evid. 403 (relevant evidence may be admitted if its probative value is not “substantially outweighed by the danger of unfair prejudice”). On appeal, the trial court’s decision to admit a photographic exhibit is reviewable for abuse of discretion. Banks, 564 S.W.2d at 949.
Photographs depicting a victim’s injuries have been held admissible to establish tor *71 ture or serious physical abuse under aggravating circumstance (i)(5). See, e.g., State v. Smith, 893 S.W.2d 908, 924 (Tenn.1994) (photographs depicting the victim’s body, including one of the slash wound to the throat, which was “undeniably gruesome,” were relevant to prove that the killing was “especially heinous, atrocious, or cruel” and were admissible for that purpose); State v. McNish, 727 S.W.2d 490, 494-95 (Tenn.1987) (photographs of the body of the victim who was beaten to death were relevant and admissible to show the heavy, repeated and vicious blows to the victim and to prove that the killing was “especially heinous, atrocious, or cruel”). Although the photographs are not necessarily pleasant to view, the photographs accurately depict the nature and severity of the injuries inflicted upon the victim. This evidence was relevant to the State’s proof of the “heinous, atrocious, and cruel” aggravating circumstance. See, e.g., State v. Morris, 24 S.W.3d 788 (Tenn.2000); State v. Hall, 976 S.W.2d 121, 162 (Tenn.1998); State v. Smith, 893 S.W.2d 908, 924 (Tenn.1994), cert. denied, 516 U.S. 829, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995); State v. Smith, 868 S.W.2d 561, 579 (Tenn.1993), cert. denied, 513 U.S. 960, 115 S.Ct. 417, 130 L.Ed.2d 333 (1994) (citing State v. Payne, 791 S.W.2d 10, 19-20 (Tenn.1990)), judgment affd. by, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720(1991); State v. Miller, 771 S.W.2d 401, 403-404 (Tenn.1989), cert. denied, 497 U.S. 1031, 110 S.Ct. 3292, 111 L.Ed.2d 801 (1990); State v. Porterfield, 746 S.W.2d 441, 449-450 (Tenn.), cert. denied, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988); McNish, 727 S.W.2d at 494-495. Moreover, given the fact that the jury rejected the (i)(5) aggra-vator, we are unable to conclude that the photographs prejudiced the jury’s verdict.
The photographs are relevant and are not so unfairly prejudicial as to bar their admission. Accordingly, we cannot conclude that the trial court abused its discretion by admitting these photographs. See Tenn. R. Evid. 403. Defendant is not entitled to relief on this issue.
III.Failure to Correctly Charge the Jury
[Deleted]
IV.Failure of Indictment to Allege Capital Offense
[Deleted]
V.Death Penalty Violates United States Treaties and International Law
[Deleted]
VI.Constitutionality of Tennessee Death Penalty Statutes
[Deleted]
X. Conclusion
[Deleted]

. I have urged adopting a protocol in which each case would be compared to factually similar cases in which either a life sentence or capital punishment was imposed to determine whether the case is more consistent with "life” cases or "death” cases. See State v. McKinney, 74 S.W.3d at 321 (Birch, J., concurring and dissenting). The current protocol allows a finding proportionality if the case is similar to existing death penalty cases. In other words, a case is disproportionate only if the case under review "is plainly lacking in circumstances consistent with those in similar cases in which the death penalty has been imposed.” Bland, 958 S.W.2d at 665 (emphasis added).

. In my view, excluding from comparison that group of cases in which the State did not seek the death penalty, or in which no capital sentencing hearing was held, frustrates any meaningful comparison for proportionality purposes. See Bland, 958 S.W.2d at 679 (Birch, J., dissenting). This case, in particular, is a prime example of the arbitrariness of this protocol.

. As I stated in my concurring/dissenting opinion in State v. Godsey, "[t]he scope of the analysis employed by the majority appears to be rather amorphous and undefined-expanding, contracting, and shifting as the analysis moves from case to case.” 60 S.W.3d 759, 797 (Tenn.2001) (Birch, J., concurring and dissenting).

. I also note that in a recent study on the costs and the consequences of the death penalty conducted by the State Comptroller, one of the conclusions was that prosecutors across the state are inconsistent in their pursuit of the death penalty, a fact that also *66 contributes to arbitrariness in the imposition of the death penalty. See John G. Morgan, Comptroller of the Treasury, Tennessee's Death Penalty: Costs and Consequences 13 (July 2004), available at www.comptrol-ler. state, tn. us/orea/reports.