# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MAY 1998 SESSION



FILED

July 24, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | C.C.A. No. 02C01-9709-CC-00354 |
| Appellee, | ) | |
| | ) | Henry County |
| V. | ) | |
| | ) | Honorable Julian P. Guinn, Judge |
| | ) | |
| **FRED BRYAN LINGENFELTER,** | ) | (Rape, Sexual Battery, Incest (3 counts)) |
| | ) | |
| Appellant. | ) | |

FOR THE APPELLANT:

Guy T. Wilkinson
District Public Defender

W. Jeffery Fagan
Assistant District Attorney General
117 North Forrest Avenue
P.O. Box 663
Camden, TN 38320

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Elizabeth T. Ryan
Assistant Attorney General
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

Robert "Gus" Radford
District Attorney General
111 Church Street
P.O. Box 686
Huntingdon, TN 38344-0686

Todd Rose
Assistant District Attorney General
Paris, TN 38242

OPINION FILED: _____

**AFFIRMED**

**PAUL G. SUMMERS,**
Judge

**O P I N I O N**

The appellant, Fred B. Lingenfelter, was convicted by a jury of three counts of incest, one count of sexual battery, and one count of rape. He was sentenced concurrently to three years for each count of incest, one year for sexual battery, and ten years for rape. He appeals, challenging the sufficiency of the evidence and the propriety of certain evidentiary rulings. We affirm the judgment of the trial court.

The victim is the appellant's stepdaughter. She was eighteen years old when the appellant committed the offenses against her. The victim testified that in October of 1995, the appellant entered her bedroom, pulled back her bed covers, and began to undress her. The appellant told her that he wanted to show her how much he loved her. When the victim said "No," the appellant became angry. He went to his room and retrieved a gun. He returned naked. He placed the gun to the victim's vagina and threatened to shoot her if she did not "show him that she loved him." The appellant vaginally penetrated the victim.

The victim testified that the appellant forced her to have sex in December 1995. After this incident, the victim tried to move out of her parent's home. When the victim discussed the move with the appellant, he put a gun to her chest. The appellant told the victim if she was going to mess up her life, then he was going to kill her. The victim testified that the appellant told her to make the right decision and stay with him. The victim testified that she stayed with the appellant and her mother so that the appellant would not shoot her.

In January 1996, the appellant threatened the victim with a knife, stating that she did not respect her body. The victim testified that the appellant placed the knife close to her breast and vagina. The appellant was angry because the

victim had been dating a fourteen-year-old boy. The victim testified that the appellant did not want her to date "at all."

In late January, the appellant awoke the victim and told her that he was going to take pictures of her. The appellant took pictures of the victim naked and pictures depicting the appellant vaginally penetrating the victim. The appellant threatened to show the pictures to the victim's family if she told anyone about them. The appellant had sexual intercourse with the victim without her consent on three occasions in January 1996.

In March 1996, the victim moved out of her parent's house. She went to live with her boyfriend, Mike. Shortly thereafter, the victim and her boyfriend moved to the victim's parents home because they had no place to go. They shared the same bed. The appellant did not like Mike because he was married, used drugs, and "the law was hunting him." The appellant, however, found Mike employment. In April, the victim reported the alleged rapes to the authorities and sought a protective order against him.

The appellant testified at trial. He admitted that he was the only father that the victim had ever known. He admitted that he and the victim had sexual intercourse, but he claimed that it was consensual. The appellant denied that he had sexual intercourse with the victim in October, but admitted that they had "foreplay." The appellant admitted having sex with the victim in December, but he claimed that it was consensual. He admitted that he had sexual intercourse with the victim on three separate occasions in January. The appellant testified that his sexual relationship with the victim grew out of a very close friendship. He testified that the victim was "starting to look into sexual activity. And she made the comment a couple of times about me being handsome and that she wished she could find a boy that was at least active and strong and not just a pot-bellied

-3-

piece of mush, which I'm not." He testified that he was proud that a young lady could look upon him as desirable.

The appellant testified that the victim asked him if she was always going to be a "fat, pudgy little kid." He testified that he took photographs of the victim nude to show her how beautiful she was, and that things just "got out of hand." He testified that he hid the pictures from his wife because "he was not really proud of them."

Investigator William Gary Vandiver took a statement from the appellant. Investigator Vandiver testified that the appellant stated that "things were done that were not right," that things started "out of curiosity on her part," and that he was "trying to be a good father and show her how things were done." The appellant stated that the victim consented to "everything that was done."

The victim's mother testified that she and the appellant had been married thirteen years. She testified that the appellant expressed an unusual interest in being in the bathroom when the victim took a shower. Mrs. Lingenfelter testified that she caught the appellant masturbating at the foot of the victim's bed while the victim slept. She told the appellant that the pictures that he took of the victim looked like pornography, "photos that someone would take and look at later." She testified that the appellant responded "No, sir, that's not why they were taken." He said that he had a good reason, but never explained it to his wife.

The appellant challenges the sufficiency of the evidence. He also argues that the court should have granted his motion for a judgment of acquittal at the conclusion of the state's case. These issues are without merit. In a sufficiency of the evidence challenge, the relevant question on appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or

crimes beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979); <u>State v. Duncan</u>, 698 S.W.2d 63 (Tenn. 1985); T.R.A.P. 13(e).

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state. <u>State v. Williams</u>, 657 S.W.2d 405 (Tenn. 1983). Moreover, a guilty verdict replaces the presumption of innocence enjoyed at trial with the presumption of guilt on appeal. <u>State v. Grace</u>, 493 S.W.2d 474 (Tenn. 1973). The appellant has the burden of overcoming the presumption of guilt. <u>Id.</u> On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. <u>State v. Cabbage</u>, 571 S.W.2d 832 (Tenn. 1978).

The appellant essentially argues that the jury should have believed that his sexual relationship with the victim was consensual. The appellant contends that the jury should have discredited the testimony of the victim because it is unbelievable that the victim would go shopping and bowling with the appellant during the period of time that he was allegedly raping her. Whether or not the victim consented to the sexual encounters with the appellant was a credibility issue for the jury to decide. The jury chose to believe the victim. The state presented evidence to establish each conviction during its case in chief.

The appellant argues that the trial court erred in admitting photographs of the victim. He argues that the probative value of the photographs is substantially outweighed by the prejudicial effect because "the victim testified herself." To be admissible, the court must determine if the evidence is relevant. The evidence must make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tenn. Rule Evid. 401; <u>see</u> <u>State v. McCary</u>, 922 S.W.2d 511, 515 (Tenn. 1996); <u>State v. Banks</u>, 564 S.W.2d 947 (Tenn. 1978). If relevant, the court must

determine whether the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. Tenn. Rule Evid. 403; McCary, 922 S.W.2d at 515. These determinations and the admissibility of photographs rest in the sound discretion of the trial judge. McCary, 922 S.W.2d at 515. We will not interfere with the discretion of the trial court unless it appears on the face of the record that the court abused its discretion. Id.

The appellant filed a motion in limine to prevent the state from introducing the photographs into evidence. The court allowed the photographs, finding that they were "pertinent" to proving the issues in the case. The state argues that the appellant waived this issue by failing to object when the photographs were introduced into evidence and because the appellant failed to include a transcript of the hearing on his motion. We disagree. The record is sufficient for us to address the issue.

The pictures are relevant to the victim's credibility which was a primary issue at trial. The pictures corroborate the victim's testimony that she and the appellant had sexual intercourse. To an extent, the photographs are prejudicial to the appellant. Unfair prejudice means an undue tendency to suggest a decision on an improper basis. Neil P. Cohen et al., Tennessee Law of Evidence § 403.5, at 153 (3d ed. 1995). The term includes evidence that appeals to a jury's sympathies, sense of horror, or instinct to punish. Id. It includes evidence that is sensational, shocking, or repulsive. Id. The jury might be inclined to punish the appellant for taking such lewd photographs of his young stepdaughter. We cannot conclude, however, that the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. We find no abuse of discretion. See State v. Leath, No. 01C01-9511-CC-00393 (Tenn. Crim. App. at Nashville, Feb. 10, 1998).

The appellant argues that the trial court erred in allowing the appellant's wife to testify that she "caught" the appellant masturbating at the foot of the victim's bed while the victim was asleep. He argues that any probative value is substantially outweighed by the unfair prejudice of the evidence. On cross-examination, the appellant's wife testified that the appellant and the victim had a normal relationship. The state sought to introduce Mrs. Lingenfelter's testimony to show that she knew of an incident that would suggest that the appellant's relationship with his stepdaughter was abnormal. The court allowed the evidence. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tenn. Rule Evid. 403. Mrs. Lingenfelter's testimony is relevant to issues of credibility, whether the appellant had sexual intercourse or sexual contact with his stepdaughter, and whether the intercourse was consensual. The evidence is prejudicial, but its probative value is not substantially outweighed by the danger of unfair prejudice. We find no abuse of discretion.

The judgment of the trial court is affirmed.

_____
PAUL G. SUMMERS, Judge

CONCUR:

_____
JOHN H. PEAY, Judge




_____
THOMAS T. WOODALL, Judge