IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

FEBRUARY 1998 SESSION

FILED

February 10, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 01C01-9609-CR-00412 |
| | ) | |
| Appellee | ) | |
| | ) | PUTNAM COUNTY |
| V. | ) | |
| | ) | HON. LEON C. BURNS, JR., |
| DAVID LEE ROBINSON and | ) | JUDGE |
| DELORES KAY SMITH, | ) | |
| | ) | |
| Appellants. | ) | (First Degree Murder) |
| | ) | |
| | ) | |

For the Appellant:

William A. Cameron
Randy S. Chafin
Cameron & Chafin
100 S. Jefferson Avenue
Cookeville, TN 38501
(Defendant Robinson)

David N. Brady
District Public Defender
215 Reagan Street
Cookeville, TN 38501
(Defendant Smith)

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Karen M. Yacuzzo
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

Eric D. Christiansen
District Attorney General Pro Tem
113 W. Church Street, Suite J
Greeneville, TN 37745

OPINION FILED: _____

AFFIRMED

William M. Barker, Special Judge

**OPINION**

The appellants, David Lee Robinson and Delores Kay Smith, appeal as of right from their convictions in the Putnam County Criminal Court. Appellant Robinson was convicted of first degree murder and sentenced to life in prison. Appellant Smith was convicted of second degree murder and sentenced to serve eighteen years and fined $40,000.

On appeal, appellants each raise the following two issues:

(1) whether the trial court erred in allowing an agent from the Tennessee Bureau of Investigation to testify as an expert that certain suspects were not involved in the crime; and

(2) whether the trial court erred in limiting cross-examination of Jacqueline Langford regarding her recollection of a statement made by appellant Smith.

In addition, appellant Robinson challenges (a) the admission of testimony that witness Kim Sims aborted a pregnancy which resulted from a relationship with him, and (b) the trial court's failure to instruct the jury not to listen to the audio portion of a videotape exhibit during its deliberations. Our review of the record reveals that no reversible error was committed in the trial court. Accordingly, we affirm appellants' convictions and sentences.

Appellants were indicted for the first degree murder of Gerald L. Irwin in Putnam County. During the evening of January 12, 1995 and early morning hours of January 13, the victim contacted appellant Robinson several times about the payment of a $200 debt that Robinson owed him. Robinson met with the victim, a known drug dealer, on two occasions that night, but denied having the money to pay the debt. Finally, Robinson called the victim and said that he had the money and expressed his desire to meet the victim. The victim suggested that they meet at the "old oak tree" in Cookeville.

Evidence showed that Robinson resold drugs that he obtained from the victim and, specifically, that he sold drugs to appellant Smith and had done so for

2

approximately one year. Smith was at the Robinson residence to purchase drugs on the night of January 12, 1995. Although she did not know the details, Smith was aware that someone was trying to collect money from Robinson. In conjunction with that, Smith had driven Robinson to a pay phone to make phone calls that evening. She was also present at the Robinson home when the victim called and suggested the meeting at the oak tree. Smith agreed to take Robinson there.

Smith drove Robinson to the old oak tree and they waited for the victim to arrive. Robinson was in possession of a small handgun that Smith had provided.[1] As the victim approached, Robinson exited the vehicle and told Smith to drive around and then come back and get him. Robinson got into the backseat of the victim's car. Kim Sims was a passenger in the front seat. The victim drove a short distance and pulled into a parking lot to turn around. As the victim turned his car, Robinson shot him in the back of the head. Robinson then told Kim Sims to move to the backseat. Robinson got in the driver's seat and pushed the victim's body over so that he could drive the car. As Robinson drove the victim's vehicle past Smith's vehicle, he motioned for her to follow him.

They drove on Interstate 40 to the Smithville exit where Robinson pulled off and parked the victim's car on Tucker Ridge Road. He took the victim's wallet, cellular phone, pager, money, and some drugs. He and Sims got into the Smith vehicle and they returned to Cookeville. Robinson, Smith, and Sims concocted a "story" regarding their activities that evening. The day following the shooting, Robinson called the victim's friends and family inquiring about his whereabouts, apparently in an attempt to divert any suspicion.

According to Sims' testimony, she spent part of the day pretending to be looking for the victim and asking others about his whereabouts, likewise in an effort to divert suspicion from her. Both Sims and Smith gave statements to law enforcement

_____

[1]In her statement to the police, Smith said that she had given Robinson the gun earlier that evening when he made the statement, "I need a gun."

3

officials that corroborated the concocted story.  Those statements were later recanted and both gave new statements to law enforcement officials.

Robinson testified at the trial and denied having any intent to kill the victim.  He claimed that he shot the victim in self-defense.  Robinson said that the victim had threatened him and his family over the course of the night and he shot the victim because the victim pointed a gun at him while in the car.[2]  Although she did supply the gun, Robinson stated that Smith had nothing to do with the murder and did not know anything about it.  The State theorized, however,  that Robinson and Smith planned the murder and both were involved.  Although certain details were corroborated by a number of other witnesses, the State's theory was established principally by Kim Sims, the only eyewitness to the crime.  Sims testified that she did not see the victim reach for his gun, and although she had been with the victim several hours that night, she never heard him threaten Robinson.

Smith did not testify at trial, but her second statement to law enforcement officials corroborated Robinson's testimony that he was fearful of the victim.  In her statement, Smith denied any involvement in the murder, but admitted giving the weapon to Robinson.  The jury convicted Robinson of the first degree murder of Irwin.  Under a theory of criminal responsibility, Smith was convicted of the lesser offense of second degree murder.

In their first issue, appellants challenge the trial court's ruling which permitted Special Agent Larry O'Rear of the Tennessee Bureau of Investigation to testify that suspects James and Nicole Rice were not involved in the murder of Gerald Irwin. While appellants do not challenge O'Rear's qualifications, they argue that his testimony invaded the province of the jury by impermissibly offering an expert opinion on the credibility of witnesses.

---

[2]Undisputed proof established that the victim was armed with a .357 Magnum which was visible in the front seat of his car.

During the police investigation into Gerald Irwin's murder, Agent O'Rear interviewed Kim Sims. In her first statement, she told Agent O'Rear that she and Irwin had been at the home of James and Nicole Rice in Baxter prior to the murder. Sims also told him that the victim left her at a motel and went back to the Rice home for a drug deal.

Based on that statement, O'Rear testified that the Rices became the "prime suspects" in the victim's murder. Police searched the Rice home and also took statements from both of the Rices. However, in light of additional information gathered during the entire investigation, Agent O'Rear testified that he determined the Rices were not involved in the murder. Sims later recanted her statement.

At trial, Smith's counsel objected to O'Rear's testimony on the basis that the testimony was hearsay. The testimony was not hearsay and the objection was correctly overruled. For the first time on appeal, the appellants argue that O'Rear's testimony invaded the province of the jury by impermissibly offering an expert opinion on the credibility of witnesses. This argument was waived when it was not raised at the trial court level. See Tenn. R. Evid. 103(a)(1); Lee v. Lee, 719 S.W.2d 295 (Tenn. Ct. App. 1986). Therefore, we decline to address this issue.

Appellants also challenge the trial court's ruling that limited the cross-examination of witness Jacqueline Langford.[3] Appellant Robinson was living with Langford at the time of the crime and they had a child together. Langford was acquainted with Smith because Smith purchased drugs from Robinson at their home. Langford stated that Smith came to her house between 9:00 and 10:00 a.m. on the morning of January 13, 1995. Langford testified that she thought Smith made a statement to the effect that Robinson was supposed to have killed Sims the night

---

[3]This is not a proper issue for Smith to raise on appeal. The trial court limited only Robinson's cross examination of Langford; no objection appears in the record to the questions asked by Smith's counsel. As a result, we address the issue only as to appellant Robinson.

5

before. She indicated on direct examination that she was uncertain of the exact statement Smith made that morning.

The following colloquy took place during cross-examination of the witness by Robinson's counsel:

Q. And, now, you say in here that she [Smith] said he [Robinson] was supposed to kill her [Sims] too. Is that right?

A. I said I think that's what she said.

Q. Under oath today, can you swear that's what she said?

A. No. I think that's what she said.

Q. You think that's what she said. Could she have said he could have killed them both?

GEN. CHRISTIANSEN: If your Honor, please, I respectfully object on what could have.

THE COURT: Sustained.

MR. CHAFFIN: Your Honor, I think I have a right to go in and ask her.

THE COURT: You can ask her, but that question was improper. Sustain the objection.

Q. You're under oath today, right?

A. Uh huh.

Q. You cannot swear that's what she said, can you?

GEN. CHRISTIANSEN: If your Honor, please, that's repetitious.

MR. CHAFFIN: Well, I'd like to be able to --

THE COURT: Sustain the objection.

Robinson alleges that he was entitled to explore the witness' answer and the trial court's restriction on cross-examination was reversible error.

It is without question that a witness may be cross-examined on any matter relevant to issues in the case, including credibility. Tenn. R. Evid. 611(b). Counsel should be afforded latitude on cross-examination to explore material issues, and the

trial court, in this case, erred in unduly limiting counsel's examination of the witness. Counsel was entitled to explore the accuracy of the memory of the witness to assist the jury in judging her credibility. Nevertheless, after a thorough review of the record, we have determined that the error was harmless beyond a reasonable doubt. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

Robinson next argues that it was error for the trial court to admit testimony from Sims that, one week before the shooting, she terminated a pregnancy which resulted from a relationship with him. He argues that such testimony was irrelevant to any issue in the case. Moreover, due to the controversial nature of abortion, Robinson asserts that the introduction of the testimony was highly prejudicial to his credibility.

Prior to Sims' testimony, Robinson's counsel made a motion in limine to exclude any testimony regarding the abortion. Apparently, the matter had been mentioned in opening argument by the State and counsel sought to prevent its introduction during the direct examination of Sims.[4] The trial court overruled the motion, finding that the information would not be unduly prejudicial to Robinson.

Bias, or the feelings that a witness has with regard to a party or issue, is relevant for the trier of fact in assessing the weight to be given to a witness' testimony. See Tenn. R. Evid. 616; State v. Williams, 827 S.W.2d 804, 808 (Tenn. Crim. App. 1991). Our supreme court recognized long ago "that witnesses are often as much influenced in testifying by feelings of friendship or hostility to parties to the case as by direct pecuniary interest in the result of the trial. . ." Creeping Bear v. State, 87 S.W. 653 (Tenn. 1905). The evidence of Sims' pregnancy and later abortion was relevant to the issue of her credibility.

However, even relevant evidence may be excluded upon a showing that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Tenn. R. Evid. 403; State v. Banks,

---

[4]The opening and closing arguments of counsel were not transcribed for the record on appeal.

564 S.W.2d 947, 949 (Tenn. 1978). While the information may have been prejudicial to the appellant, he has failed to show that its prejudicial effect substantially outweighed its probative nature. Appellant is entitled to no relief.

In Robinson's final issue, he alleges the trial court failed to instruct the jury not to listen to the audio portion of a videotape exhibit during deliberations. During the trial, a videotape of the crime scene was played for the jury and narrated in open court by Detective David Andrews of the Putnam County Sheriff's Department. However, the tape also included narration by Detective Andrews when the scene was filmed. When the jury retired for deliberations with the exhibits, the trial court did not specifically instruct it not to listen to the audio on that particular videotape.

We note that counsel for appellant Robinson did not request that the trial court give a limiting instruction and we consider the issue waived. Tenn. R. App. P. 36(a). Furthermore, there is no indication that the jury actually watched the videotape during deliberations, and if so, whether any members of the jury listened to the narration. Finally, Robinson has failed to show how he was prejudiced, if the jury in fact did listen to the narration. This issue is without merit.

Having found no reversible error in the record before us, we affirm the appellants' convictions and the resulting sentences.

 

_____
William M. Barker, Judge


CONCUR:


_____
Gary R. Wade, Presiding Judge


_____
Curwood Witt, Judge