IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 12, 2023

**STATE OF TENNESSEE v. WILLIAM MOQUANN SMITH**

**Appeal from the Circuit Court for Williamson County**
**No. M-CR190419-A     James G. Martin III, Judge**

———————————————

**No. M2023-00460-CCA-R3-CD**

———————————————

The Defendant, William Moquann Smith, was convicted by a Williamson County Circuit Court jury of two counts of aggravated robbery, a Class B felony, and one count of theft of property valued at $10,000 or more but less than $60,000, a Class C felony, for which he is serving an effective eleven-year sentence in confinement and three years of probation. *See* T.C.A. §§ 39-13-403 (2018) (especially aggravated robbery), 39-14-103 (2018) (theft of property), 39-14-105(a)(4) (2018) (grading of theft).  On appeal, he contends that the trial court erred in admitting a video recording and several photographs depicting him with a handgun.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Vakessha Hood-Schneider, Franklin, Tennessee, for the appellant, William Moquann Smith.

Jonathan Skrmetti, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Stacey Edmonson, District Attorney General; and Mary Katharine Evins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's convictions relate to a car theft, followed by two robberies, that occurred on January 31, 2019.  The Defendant and codefendant Ryan Craddock drove the stolen car to two bank ATMs, where the codefendant robbed two victims of cash at gunpoint.  The robberies were captured on ATM video recordings.  The Defendant provided the gun used for the robberies and accompanied the codefendant in the car during the robberies.  The codefendant was seen on the recordings wearing a face mask and

holding a two-toned, silver and black, semi-automatic handgun. The Defendant was also identified on the video recordings by his hooded sweatshirt, physical appearance, and his cell phone's location data.

On June 10, 2019, the Williamson County Grand Jury indicted the Defendant on two counts of aggravated robbery and one count of theft of property valued at $10,000 or more but less than $60,000. The Defendant asked that a facilitation jury instruction be given and filed a motion in limine to exclude photographs and a video recording obtained from the Defendant's cell phone, which depicted the Defendant's holding a two-toned, semi-automatic handgun.

At the motion hearing, the Defendant contended that the photographs were unfairly prejudicial pursuant to Tennessee Rule of Evidence 403. The Defendant noted that law enforcement did not recover the handgun used in the robberies, that two-toned handguns were common, and it was too speculative to assume that the two-toned handgun seen on the ATM video recordings was the same handgun held by the Defendant in the cell phone photographs and video recording. The State argued that the handgun used in the robberies was clearly depicted in the ATM recordings as being a two-toned, silver and black handgun, making the photographs from the Defendant's cell phone of a two-toned, silver and black handgun, which were taken only days before the robbery, probative that it was the same handgun used in the robberies. The State also argued that the photographs of the handgun were probative because they corroborated the codefendant's statement to law enforcement that the Defendant was the person who provided the codefendant with the handgun used in the robberies.

The trial court granted the request for a facilitation jury instruction and denied the Defendant's motion to exclude, ruling as follows:

> . . . [the Defendant] has asked for a facilitation charge, which I will give. And if the proof of this case were to show that he provided the gun used by [the codefendant], that would nail the facilitation charge as appropriate. . . . the State of Tennessee contends that [the Defendant] is guilty as a principal in this case and his supplying the firearm that was used by [the codefendant] would be very important in the State's case on that claim. So if the evidence comes in, that the gun used by [the codefendant] was a two-toned gun and that [the Defendant] supplied the two-toned gun to [the codefendant] and the photographs depict [the Defendant] with a two-toned gun, the Court finds on those facts that the probative value clearly outweighs the prejudicial effect.

At the trial, Brentwood Police Department (BPD) Officer Anthony Weakley testified that he was on patrol the evening of January 31, 2019, and responded to a robbery

call at a Bank of America ATM. Officer Weakley stated that he took the victim's statement regarding the robbery and met with a Franklin Police Department (FPD) officer who was dispatched to assist at the scene. While discussing the robbery with the FPD officer, Officer Weakley learned that another armed robbery had recently occurred at an ATM in Franklin.

Rebecca Duttlinger testified that on January 31, 2019, she arrived at the Bank of America ATM in Brentwood when a man, wearing a bandana with a money motif and a gray jacket with a hood pulled over his head, approached her car window, pointed a black pistol at her, and demanded money. She said that she gave the man twenty dollars that she had "in hand" and then withdrew $200 from her bank account. She stated that she was "panicking" and was afraid for her life. She said that after receiving the money, he ran to a car and left.

Ms. Duttlinger testified that her car was parked in the middle drive-through ATM lane and the man's car was parked in the left ATM lane. She said that she did not see anyone other than the man. A photograph and a video recording from the ATM depicting Ms. Duttlinger and the man were received as exhibits. From the recording, Ms. Duttlinger identified her vehicle and images of her getting out of her car to deposit and withdraw money from the ATM. She also identified the man, a bandana around his face and wearing a gray jacket with the hood pulled tight, the handgun, and the man's car. Ms. Duttlinger said that after withdrawing money for the man, she returned to her car and called 9-1-1. The 9-1-1 call was received as an exhibit.

Selvin Corea-Caceres testified that on January 31, 2019, around 7:30 p.m., he and his wife drove to a Bank of America ATM in Franklin to deposit money. He said that he parked his car in front of the ATM, got out of his car, and approached the ATM with approximately $2,100 for deposit. He said that as he was depositing the money, "someone arrived and pointed at [him] with a weapon and that person told [him] to hand over the money" and took the money. He said that he thought he would lose his life. He described the handgun as being two different colors with "shiny silver" on the top half and black on the lower half. Mr. Corea-Caceres said that while handing over the money, some of it fell to the ground. At the moment the money fell to the ground, Mr. Corea-Caceres said he thought about grabbing the handgun but changed his mind because he feared that the "one who was driving" might be armed. Mr. Corea-Caceres said that the driver never got out of the car. Mr. Corea-Caceres said that he "didn't notice much about [the driver]," that the driver "was looking at us," and that the driver was dark skinned, heavy-set, and had curly hair. Mr. Corea-Caceres said that the men drove away quickly once they had the money. A Franklin ATM video recording was received as an exhibit, and Mr. Corea-Caceres identified his car, himself, and the man's car parked behind Mr. Corea-Caceres's car at the ATM.

On cross-examination, Mr. Corea-Caceres testified that although he did not include a description of the driver in his written police statement, he gave the officer a verbal description of the person driving the car. Mr. Corea-Caceres acknowledged that he did not notice the driver's clothing.

Idis Garcia-Reyes, Mr. Corea-Caceres's wife, testified through an interpreter that she was with her husband at the Franklin ATM on January 31. Ms. Garcia-Reyes stated that she stayed in the car while he went to the ATM. She said that while he was at the ATM, a car pulled up behind their car. She said that a man got out of the car, stood next to her car window, knocked, and said "money, money." She said that, in response, she pointed toward her husband. She said that she was afraid to call 9-1-1 while her husband was being robbed because she saw another person in the car behind her. She described the driver as being black, bearded, "heavy," and wearing a hood. She said she turned around in her seat in order to see the driver. Ms. Garcia-Reyes said that after the man got the money, he ran to the car, and then "took off fast." Ms. Garcia-Reyes stated that her husband called the police.

On cross-examination, Ms. Garcia-Reyes testified that she spoke to a Spanish-speaking detective at the scene but to no other officers. She acknowledged that her written statement did not mention anything about a second man who was driving the car. She attributed her lack of detail to being nervous at the time. She also acknowledged that her written statement did not mention anything about someone knocking on her car window and that the ATM recording did not depict this event. She denied opening her car door and could not explain why a recording of the scene showed her opening her car door. Ms. Garcia-Reyes also could not explain why the ATM recording did not show her looking back toward the driver of the other car. On recross-examination, she admitted that she might be misremembering events if they were depicted differently on the ATM recording.

Zachary Rouser testified that on January 31, 2019, at approximately 5:30 p.m., he was getting out of his 2015 Toyota Corolla at his home on Cedar Cottage Drive when a man put a handgun to his head and told him to empty his pockets, including his wallet and cell phone, onto the grass beside his driveway. Mr. Rouser said that he complied and that the man drove away in Mr. Rouser's car. Mr. Rouser estimated the value of his car as between $14,000 and $15,000. Mr. Rouser said he later recognized the man who stole his car in a photograph in a local news story regarding the ATM robberies, which included an ATM photograph of a suspect. The photograph was received as an exhibit. Mr. Rouser described the handgun as being a "silver chrome, not black" pistol. Mr. Rouser did not know how the man arrived, nor did he see anyone else. Mr. Rouser said that he was "pretty shaken up" and "fearful" as a result of the theft of his car. Mr. Rouser said that the police located his car about a week later.

-4-

After being shown photographs from the ATM video recordings, Mr. Rouser identified the car in the photographs as his Toyota Corolla. Mr. Rouser also identified the man who stole his car as the person depicted on the ATM recordings pointing a handgun.

Codefendant Ryan Craddock testified that he pleaded guilty to the Brentwood and Franklin ATM robberies. The codefendant stated that, at the time of the robberies and in order to conceal his identity, he wore a face mask and a hooded sweatshirt with the hood pulled up and tied tightly around his face. He identified himself as being the individual with the handgun in the ATM video recordings and acknowledged that he arrived at the ATMs in the car depicted on the ATM recordings. He agreed that he drove to the Brentwood ATM with another person, whom codefendant Craddock said drove away from the Brentwood ATM after codefendant Craddock moved to the passenger seat. When asked who was driving, the codefendant responded, "I don't know."

The codefendant testified that he was familiar with the Defendant and had communicated with the Defendant via text messages and social media and said he followed the Defendant on Instagram. The codefendant stated that he had known the Defendant for several years and that, at some point, they lived together for a couple of months.

The codefendant testified that he was arrested on February 5, 2019, and subsequently was interviewed by law enforcement. He stated that he remembered being interviewed by Detective Bobby Dilworth, that during the interview he was asked where he got the handgun, but that his reading at the trial the transcript of the interview failed to refresh his recollection as to his answer. The State then played a portion of the interview recording, in which the codefendant acknowledged that the Defendant provided him with the handgun and was with him during the robberies. The recording of the interview was received as an exhibit.

On cross-examination, the codefendant testified that he was eighteen years old when he was arrested and interviewed. He said that he felt pressure to provide a name in response to the interview questions, that he did not want to talk to law enforcement, and that he did not know he could ask for a lawyer. He also stated that he wrote two letters to the District Attorney's office stating that the Defendant was not with him on January 31, 2019, and that during a pretrial interview with an assistant district attorney, he felt that she was "pressuring [him] to convict somebody."

On redirect examination, the codefendant acknowledged that Detective Dilworth advised him of his rights before the interview. On recross-examination, the codefendant testified that as an eighteen-year-old, he did not understand his rights and believed he had to talk to law enforcement.

FPD Officer Bobby Dilworth testified that he was the "on-call" detective on January 31, 2019, and went to the scene of a Franklin ATM robbery, where he obtained written statements from Mr. Corea-Caceres and Ms. Garcia-Reyes and viewed the ATM surveillance video recording. While at the scene, Officer Dilworth learned that a similar robbery occurred in Brentwood approximately fifteen minutes before the Franklin robbery. Officer Dilworth testified that he interviewed the codefendant on February 14, 2019.

Officer Dilworth testified that the codefendant resembled the suspect on the ATM video recordings, based upon the codefendant's skin tone and facial features. Officer Dilworth said that the Brentwood ATM recording depicted the person with the codefendant as being a heavy-set black man wearing a blue hoodie with gray striping on the sleeves. A photograph of the Brentwood ATM area taken on January 31, 2019, and an ATM recording were shown to Officer Dilworth. Officer Dilworth noted that the photograph and recording depicted the two robbery suspects in a four-door Toyota car. Officer Dilworth explained that one of the suspects, who was wearing tan clothing and a face covering, walked away from the car while the other suspect, who remained in the car, slid from the front passenger seat to the driver's seat. Officer Dilworth said that the suspect in the car was wearing a blue and gray hooded sweatshirt with a stripe over the shoulder, that he was black based upon the color of his hand holding the steering wheel, and that he appeared to be a "large" individual based upon his size relative to the car. Officer Dilworth stated that the Brentwood and Franklin ATM recordings depicted the same four-door Toyota and the same suspects.

Officer Dilworth testified that he subpoenaed and received cell phone records from a cell phone service provider for a number ending in -2281 and that he used software to gather data from those records. Officer Dilworth said the software indicated that the cell phone was in the area of Brentwood and Franklin at times consistent with the robberies. Officer Dilworth said that the data also indicated that the cell phone was in the area of the car theft, on January 31, 2019, at approximately 5:44 p.m. Officer Dilworth said that he verified the data by "hand plotting" cell tower locations using data from the service provider. Officer Dilworth also indicated these cell towers were within one or two miles of the crime scenes. The cell phone records and data were received as exhibits.

Officer Dilworth testified that the cell phone data indicated that the subscriber was Monique Johnson with a Nashville address. Officer Dilworth stated that the software indicated that the cell phone was most frequently used in the vicinity of Ms. Johnson's address.

Detective Adrian Breedlove testified that in February 2019, he went to the Nashville address associated with the -2281 cell phone, met the Defendant, and obtained the Defendant's cell phone. Detective Breedlove stated that he examined the data extracted from the Defendant's cell phone and generated a timeline of data usage. He said that he

examined the cell phone's location information for January 31, 2019, between 7:30 p.m. and 8:00 p.m. He said the location information data from the Defendant's cell phone established that the phone had been at the Brentwood ATM for several minutes at the time of the Brentwood robbery, traveled south to the Franklin ATM at the time of the Franklin robbery, and then traveled north to I-65.

Detective Breedlove testified that he also examined the Defendant's cell phone location data for January 31, 2019, from 5:30 p.m. until 5:36 p.m., and determined the location information indicated that the cell phone was located near the car theft location. The hard drive and accompanying graphs and maps with extracted cell phone data were received as exhibits.

At this point, the trial court held a jury-out hearing regarding the admissibility of photographs from the Defendant's cell phone, which depicted the Defendant holding a two-toned, black and silver, semi-automatic handgun and wearing a hooded sweatshirt. The Defendant alleged the photographs were unfairly prejudicial and should be excluded pursuant to Tennessee Rule of Evidence 403. The court overruled the objection. The court noted that the identity of the Defendant was the "paramount issue," that a two-toned, silver and black handgun was used in the robberies, that the codefendant identified the Defendant as giving him the handgun, and that the ATM video recordings depicted a suspect wearing a hooded sweatshirt with a specific design. The court determined that the photographs of the Defendant holding a similar gun and wearing a similar sweatshirt had probative value that was not substantially outweighed by the danger of unfair prejudice.

Detective Breedlove testified that the Defendant's cell phone contained several photographs and recordings connecting the Defendant to the robberies. Detective Breedlove stated that he was able to ascertain the time and date the photographs were saved on the Defendant's cell phone. Detective Breedlove identified several photographs depicting the Defendant in a hooded sweatshirt identical to the sweatshirt worn by a suspect on the Brentwood ATM video recording. The photographs were taken on January 29, 2019, January 30, 2019, and February 5, 2019. Detective Breedlove also identified six photographs taken on January 27, 2019, which depicted the Defendant holding a two-toned, silver and black handgun similar to the one shown on the ATM recordings. Finally, Detective Breedlove identified a still-frame image from a video dated February 5, 2019, which depicted the Defendant wearing the hooded sweatshirt and holding two handguns, including a two-toned, silver and black, semi-automatic handgun matching the description of the handgun used in the robberies. The photographs and the cell phone video recording were received as exhibits.

Detective Breedlove testified that the data from the Defendant's cell phone reflected internet searches on February 1, 2019, for "Robbery nashville tn late last night," and on February 3, 2019, for "ATM robbery." Detective Breedlove also noted that on the days

immediately after the robberies, the cell phone was used to visit several websites regarding news about the robberies.

Detective Breedlove testified that he compared the two-toned, semi-automatic handgun from the ATM video recordings with the two-toned, semi-automatic handgun depicted on the Defendant's cell phone. Examining still photographs from the Franklin ATM recording, Detective Breedlove stated that he could clearly view the handgun used in the robbery, including the silver slide, the injection port housing, and the rear and front sites. Detective Breedlove stated that he was very familiar with handguns and noted that the handgun in all the photographs and recordings had the same two-tone, silver and black design and the same injection port location. He concluded that the handgun used in the robberies was the same handgun the Defendant was holding in the images from the Defendant's cell phone. Detective Breedlove also concluded that, based upon the phone's features and location data, a cell phone depicted on the Brentwood ATM recording was the Defendant's cell phone.

On cross-examination, Detective Breedlove testified that the two-toned handgun in the ATM video recordings was "not a rare handgun." Detective Breedlove acknowledged that the handgun used in the robberies was never recovered by law enforcement and that he could not identify the handgun on the ATM recordings by its serial number. Detective Breedlove stated that a cell phone's location data identified only the location of the cell phone and not necessarily the location of a particular person.

On redirect examination, Detective Breedlove testified that the Brentwood ATM video recording depicted the unidentified suspect, whose description was consistent with that of the Defendant, possessing the Defendant's cell phone at the time of the robbery.

The jury found the Defendant guilty on all three counts. The Defendant filed a motion for new trial, which was denied by the trial court. This appeal followed.

The sole issue on appeal is whether the trial court erred in admitting photographs and a video recording of the Defendant holding a handgun. The Defendant contends that the photographs and recording are inadmissible pursuant to Tennessee Rule of Evidence 403 because the prejudicial effect of seeing images of a young black man with a handgun substantially outweighs any probative value of those images. The State argues that the probative value of the photographs and recording outweigh the danger of unfair prejudice because the handgun used during the robberies matched the design of the handgun depicted in the images from the Defendant's cell phone. We agree with the State.

Evidence is relevant and generally admissible when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401, 402.

Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Questions regarding the admissibility and relevance of evidence generally lie within the discretion of the trial court, and the appellate courts will not "interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

The admission of a photograph as evidence is within the trial court's discretion. *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006). Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

The Defendant relies on *State v. Tarik Deshawn Newman*, No. M2019-01986-CCA-R3-CD, 2021 WL 4854180 (Tenn. Crim. App. Oct. 19, 2021). In *Tarik Deshawn Newman*, the defendant was on trial for kidnapping, robbery and other charges. The weapon used in the robbery was recovered by law enforcement. The trial court admitted Facebook photographs of the defendant, two of which depicted the defendant pointing guns that were not used during or connected to the kidnapping or robbery. This court found the photographs were unfairly prejudicial "because the recovered weapon was not depicted in the photographs, because the photographs did not depict the clothing described by the victim, and because they were unnecessary because other properly admitted photographs showed [the] [d]efendant's face and hairstyle." *Id.* at *14 (citation omitted). However, this court also noted that where the defendant's identity was at issue, photographs of the defendant that matched the victim's description of the perpetrator were relevant and highly probative. *Id.*

Similarly, in *State v. Lamantez Desha Robinson,* this court held that where the identity of the perpetrator was the sole issue at trial, a Facebook photograph of the defendant holding weapons that resemble the murder weapon tended to make it more likely that the defendant was in possession of the murder weapon, and the trial court did not abuse its discretion by admitting the photograph into evidence. No. M2016-02335-CCA-R3-CD, 2017 WL 4693999, at *8 (Tenn. Crim. App. Oct. 18, 2017), *perm. app. denied* (Tenn. Feb. 14, 2018); *see State v. Larry E. Orozco*, No. M2017-00327-CCA-R3-CD, 2018 WL 2372197, at *8 (Tenn. Crim. App. May 24, 2018) ("There can be no genuine question that a photograph taken from the [d]efendant's cell phone shortly after the offense showing the [d]efendant in similar clothing as described by victims of the offense and brandishing a

similar gun as used in the offense is probative of whether the [d]efendant possessed a gun during the offense.")

The record reflects that the Defendant's cell phone contained images of the Defendant holding a handgun that matched the handgun used in the robberies and the car theft. Trial testimony indicated that the handgun depicted in the cell phone images had the same two-toned, silver and black design with a semi-automatic operation and matching injection port housing as the handgun used in the robberies and that the images of the Defendant holding the handgun were taken only days before the robbery. Noting that the Defendant's identity was the paramount issue at the trial and that the evidence showed the Defendant provided the codefendant with the two-toned handgun used in the robberies, the trial court found that the cell phone images of the Defendant with the two-toned handgun had a "probative value that [was] not substantially outweighed by the danger of unfair prejudice[.]" The court did not abuse its discretion by admitting the images. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE