IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs, April 18, 2000

## STATE OF TENNESSEE v. ANDREW CHARLES HELTON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-B-1052     Seth Norman, Judge**

---

**No. M1999-01405-CCA-R3-CD - Filed October 13, 2000**

---

The Defendant, Andrew Charles Helton, was indicted, along with co-defendants Shirley Crowell and Shayne Cochran, for two counts of premeditated murder and two counts of felony murder for the shooting deaths of Robert Cole and Michael Chatman. After the trial court granted a motion for a judgment of acquittal on the felony murder charges, the Defendant was convicted by a jury of first degree murder for the death of Robert Cole and of second degree murder for the death of Michael Chatman. The Defendant was sentenced to mandatory life imprisonment for the first degree murder conviction and to twenty-three years imprisonment for the second degree murder conviction. The Defendant now appeals and argues that the evidence presented at trial was insufficient to sustain his convictions. The Defendant also contends that the trial court erred in admitting certain crime scene and autopsy photographs into evidence. After a thorough review of the record and applicable law, we find no merit to the Defendant's contentions and thus affirm his convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH, J. and JOHN EVERETT WILLIAMS, J., joined.

Jeffrey A. DeVasher (on appeal), Assistant Public Defender, and Ross Alderman (at trial), Metropolitan Public Defender, Nashville, Tennessee, for the appellant, Andrew Charles Helton.

Paul G. Summers, Attorney General and Reporter, David H. Findley, Assistant Attorney General, Criminal Justice Division, Victor S. Johnson, III, District Attorney General, Pamela Anderson, Assistant District Attorney General, and T.J. Haycox, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

Prior to the evening of November 28, 1997, the Defendant had known victim Michael Chatman for about eleven years. However, it was not until the Defendant got divorced that he and Chatman began to socialize on a regular basis. During the months before the killings, the Defendant testified that he and Chatman would see each other at least a couple of times a week. A few days before Thanksgiving, 1997, the Defendant testified that Chatman came to his house, pushed him against the wall, and accused the Defendant of trying to "cross him out with his girlfriend." A friend broke the fight up, and according to the Defendant, Chatman "broke down . . . and started crying."

The next time the Defendant saw Chatman was on the evening of November 28, 1997. On that night, the Defendant was at home not feeling very well when Michael Chatman called and asked the Defendant to come over. The Defendant declined, and Chatman offered to come over and bring the Defendant some food. Chatman went to the Defendant's apartment with food and a bottle of Crown Royal whiskey. The two men drank for a short time and then decided to go out. They went to Shayne Cochran's house, and then all three men went to Bailey's Sports Bar in Rivergate. At Bailey's, the men met up with Robert Cole and decided to go to the home of Leslie Hebert, a friend of Cochran's. Allison Dowell and Hebert's roommate were also present when the men arrived. After staying at Hebert's house for awhile, the Defendant, Cochran, Chatman, Cole, Hebert, and Dowell went to an after-hours club downtown called "The Church."

When the group arrived at The Church, the Defendant took off his jacket and left it in the car that Chatman had been driving. The Defendant testified that the jacket contained approximately $200.00 in cash and a small amount of marijuana. At The Church, the Defendant became separated from the group. Thinking that the Defendant might have gone home, Cochran, Chatman, Cole, Hebert, and Dowell left The Church and went to the Defendant's apartment. Cochran hid a Crown Royal bag full of cocaine and pills behind one of the buildings at the Defendant's apartment complex and then retrieved it shortly thereafter. The group waited outside the Defendant's apartment for a brief period of time and then went to Chatman's apartment in Antioch.

When the group arrived at Chatman's apartment, Chatman's roommate took his car, which Chatman had been driving all evening, and went to work. Without a car, the two women had no way to get home so they paged the Defendant, hoping that he would take them home. The Defendant testified that he was on his way to his apartment in a cab he shared with Shirley Crowell, Chatman's ex-girlfriend whom the Defendant encountered at The Church, when he got a page from Cochran and Chatman. The Defendant testified that he called Chatman's apartment, and Chatman asked him to come over because Hebert and Dowell needed a ride home. Crowell, who had recently broken up with Chatman, agreed to ride with the Defendant to pick up Hebert and Dowell, but said that she would not go inside.

The Defendant eventually arrived at Chatman's apartment and testified that he asked Chatman about his jacket that he left in the car. Chatman told the Defendant that Cochran had gotten the jacket out of the car and that it was in the living room. When the Defendant retrieved his jacket, he realized that several items, including $200.00 and some marijuana, were missing. The Defendant

-2-

talked briefly with Cochran outside while Chatman went upstairs to change clothes. After changing clothes, Chatman came back downstairs about the time that the Defendant came inside.

Although the Defendant's story differs as to what occurred next, Hebert and Dowell testified that the Defendant began to accuse Chatman of stealing. Dowell testified that the Defendant and Chatman were arguing "kind of loud." Dowell also noticed that the Defendant had a gun strapped on his shoulder underneath his jacket. When Chatman denied the allegation, Hebert and Dowell testified that the Defendant pulled out a gun and shot Chatman. According to Hebert and Dowell, Chatman did not touch the Defendant before he started shooting. Hebert testified that the Defendant just began shooting for no apparent reason.

Soon after the Defendant began shooting, Hebert ran outside, and Dowell ran to the back of the apartment. Dowell testified that she saw the first shot and could hear more shots as she was running to the back of the apartment. At one point, Dowell testified that the Defendant walked to the back of the apartment where she was, looked at her for a moment, and then returned to the front of the apartment. In fear that she might be shot for hiding, Dowell went to the front of the apartment and saw the Defendant shoot Chatman one more time in the mouth. Dowell then ran outside and found Hebert hiding in the bushes.

Hebert testified that she was hiding outside with a view of the apartment. She saw Dowell run outside and saw Chatman lying on the floor and Cole sitting on the living room couch. Hebert testified that Cole remained sitting on the living room couch during the entire confrontation between the Defendant and Chatman. This is contradictory to the Defendant's testimony that Cole had been involved in the fight. The Defendant testified that Cole was pulling at the Defendant's pockets and claimed that he shot Cole only to make him let go.

After the killings, the Defendant and Cochran got into the Defendant's car. Cochran asked Hebert and Dowell to get in also. Hebert and Dowell got into the car and saw that Shirley Crowell was also present. After driving a short distance in the parking lot, the Defendant returned to Chatman's apartment and retrieved Dowell's purse as well as the gun that he had used to shoot Chatman and Cole. Crowell made some threatening statements to Hebert and Dowell. Hebert testified that the Defendant told her and Dowell, "I am sorry y'all had to see that."

When police arrived at Chatman's apartment after the shooting, Chatman was found lying on the floor near the front door, and Cole was found lying on the living room couch. Both Chatman and Cole had been shot multiple times. The police were able to get a description of the Defendant's car from neighbors and within minutes were in pursuit. During the pursuit, Crowell threw the gun out of the car window. The Defendant, upon realizing that the police were behind him, put the car in neutral and got out of the car. Everyone fled from the car, except for Hebert, who jumped into the front seat to stop the car from rolling. All of the occupants of the car, including the Defendant, were found and taken into police custody. The police also found the nine millimeter semiautomatic handgun on a sidewalk near the Defendant's car.

Both victims were pronounced dead upon arriving at nearby hospitals. Autopsies performed on the victims revealed the following: (1) Chatman had a "contact" wound to his lower left abdomen, a "close-range" wound to his upper left abdomen, and a contusion to the right side of his head; (2) Cole had a "close-range" gunshot wound to the left eyebrow and additional gunshot wounds on the right side of the head and on the scrotum; and (3) both victims tested positive for cocaine, marijuana, and alcohol.

The Defendant was convicted by a jury of first degree murder for the death of Robert Cole and of second degree murder for the death of Michael Chatman. The Defendant now contends that the evidence presented at trial was insufficient to sustain his convictions. In addition, the Defendant argues that the trial court erred in admitting a number of crime scene and autopsy photographs into evidence.

## I. SUFFICIENCY OF THE EVIDENCE

The Defendant argues that the evidence presented at trial is insufficient to support either his conviction for first degree murder or his conviction for second degree murder. Viewing the evidence in the light most favorable to the State, we conclude that the evidence is sufficient to support both convictions.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the evidence in the light most favorable to the prosecution in determining "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Meade, 942 S.W.2d 561, 564 (Tenn. Crim. App. 1996) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Because the presumption of innocence is replaced by a presumption of guilt upon conviction, a convicted criminal defendant bears the burden of showing that the evidence presented at trial was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963). This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). On appeal, this Court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). This Court will not reweigh or reevaluate the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1982) (citing Cabbage, 571 S.W.2d at 835). A criminal conviction shall be set aside where the evidence is "insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e).

### A. First Degree Murder

The Defendant argues that the evidence presented at trial was insufficient to support a conviction for first degree murder. Specifically, the Defendant argues that he did not act with premeditation when shooting Robert Cole. We disagree.

First degree murder is the premeditated and intentional killing of another person. Tenn. Code Ann. § 39-13-202(a)(1). Once a homicide has been established, it is presumed to be second degree murder, and the State has the burden of proving premeditation to raise the offense to first degree murder. State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999) (citing State v. Nesbit, 978 S.W.2d 872, 898 (Tenn. 1998)). Premeditation is defined as "an act done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d).

> "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Id. Premeditation is the process of thinking about a proposed killing before engaging in the homicidal conduct. See State v. Brown, 836 S.W.2d 530, 540-41 (Tenn. 1992).

The existence of premeditation is a question of fact for the jury to determine and may be inferred from the circumstances surrounding the offense. State v. Rosa, 996 S.W.2d 833, 837 (Tenn. 1999) (citing Brown, 836 S.W.2d at 539). The use of a deadly weapon upon an unarmed victim and a defendant's calmness after the crime may support the existence of premeditation. Id. (citing State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997)).

Viewing the evidence in the light most favorable to the State, a jury could have reasonably found that the Defendant shot and killed victim Cole after the exercise of reflection and judgment. See Tenn. Code Ann. § 39-13-202(a)(1), (d). It is undisputed that the Defendant shot both of the victims. Allison Dowell testified that when the Defendant left the scene the first time, Cole was still sitting on the couch. Dowell's testimony is substantiated by that of Janet Dixon, a resident of the adjoining townhouse, who testified that she heard "three popping sounds," a car pull away and come back, and then more popping sounds. Hebert also testified that when she came back to the front of the apartment after Chatman had been shot, she saw Cole sitting on the couch. No evidence was presented at trial to support the Defendant's testimony that he shot Cole immediately after he shot Chatman because Cole would not let go of the Defendant's pockets. Cole was unarmed when the Defendant shot him.

The testimony at trial also indicated that the Defendant was unusually calm after the shootings. The Defendant testified that when he went back into the apartment and retrieved the gun, the victims were convulsing and in pain; yet he did not call for an ambulance. Instead, the Defendant got into his car and drove away. In the car, he told Hebert and Dowell that he was sorry that they had to see what had happened. Hebert testified that the Defendant was the "calmest out of everybody there." These circumstances indicate a calmness immediately following the killings, which supports a finding of premeditation. See Bland, 958 S.W.2d at 660. Thus, there is nothing to indicate that the jury acted unreasonably in finding that the Defendant acted with a previously formed intent to kill when he shot Cole. See Tenn. Code Ann. § 39-13-202(d).

## B. Second Degree Murder

The Defendant argues the evidence presented at trial was insufficient to convict him for second degree murder. Specifically, the Defendant argues that the offense amounted to, at most, voluntary manslaughter, that is, an "intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). However, it is the opinion of this Court that there was ample evidence in the record to establish that the Defendant knowingly shot and killed Chatman without the adequate provocation to reduce the conviction to voluntary manslaughter. Witnesses Hebert and Dowell both testified that the Defendant was the one who confronted Chatman and accused him of stealing. Other than the Defendant's own testimony, there is no evidence that Chatman provoked or attacked the Defendant.

Whether acts constitute a knowing killing, so as to support a conviction for second degree murder, or a killing due to adequate provocation, so as to support a conviction for voluntary manslaughter, is a question for the jury. State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995). In this case, the jury was instructed on both the offense of voluntary manslaughter and that of second degree murder and determined that the Defendant was guilty of second degree murder. It was within the jury's prerogative to reject the notion of provocation. See id.

## II. THE PHOTOGRAPHS

The Defendant argues that the trial court erred in admitting certain crime scene and autopsy photographs into evidence. It is within the discretion of the trial court to admit photographs into evidence, and such a ruling shall not be reversed absent a clear showing of abuse. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). Evidence shall be excluded where the probative value is substantially outweighed by the danger of unfair prejudice. Tenn. R. Evid. 403. Because the probative value of the photographs outweighs any potential prejudicial effects, we find that the trial court correctly allowed the photographs to be admitted into evidence.

### A. Crime Scene Photographs

The Defendant argues that the trial court erred in admitting into evidence several photographs of the crime scene. Specifically, the Defendant argues that the probative value of the evidence was outweighed by the danger of unfair prejudice. See Tenn. R. Evid. 403. The basis of this argument is that the pictures were unduly gruesome and should not have been admitted because other less inflammatory evidence could have been used instead. We disagree.

The trial court did not abuse its discretion in admitting photographs of the crime scene into evidence. All of the crime scene photographs were relevant to the location of the victims' bodies and to other key evidence in this case. One photograph was admitted to show where Cole's body was found because the manner and location in which Cole was shot was in dispute. Two other crime scene photographs were probative of the damage done to the room that may have resulted from a

scuffle. These photographs contain placards pointing out where various pieces of evidence were located in the room and thus are probative of the location in which evidence was found at the scene. The final crime scene photograph that was objected to shows a bullet hole in one of the pillows on the couch. This photograph was used to assist Detective Tim Mason with his testimony at trial and was also probative of the manner and location in which Cole was shot. The photographs admitted into evidence are not unduly gruesome and thus not unfairly prejudicial. Although it is unfortunate that the photographs of the room, and the furniture therein, contained blood stains from the murders, the probative value of the living room layout outweighs any prejudicial effect.

## B. Autopsy Photographs

The Defendant argues that the trial court erred in admitting autopsy photographs of both victims. Specifically, the Defendant argues that the medical testimony presented by the State adequately described the degree and extent of the victims' injuries, reducing the probative value of the pictures. However, it is the opinion of this Court that the probative value of the photographs outweighed any prejudicial effects and thus were properly admitted into evidence.

The Tennessee Supreme Court has held that photographs of a corpse are "admissible in murder prosecutions if they are relevant to the issues on trial, notwithstanding their gruesome and horrifying character." Banks, 564 S.W.2d at 950-51. However, where medical testimony adequately describes the degree or extent of injuries, such photographs should generally be excluded. State v. Collins, 986 S.W.2d 13, 21 (Tenn. Crim. App. 1998).

In this case, the autopsy photographs were used by the State to show entry and exit wounds, as well as the range at which the victims were shot. This evidence directly relates to the State's position regarding the manner in which the victims were killed. The number and location of the wounds were relevant to the State's argument that the shootings were premeditated and intentional. We therefore conclude that the trial court did not err by admitting autopsy photographs of the victims.

## CONCLUSION

We conclude that the evidence presented at trial is sufficient to support both of the Defendant's convictions. On the basis of the evidence in the record, a reasonable jury could have found that the Defendant was guilty of second degree murder for the knowing killing of Michael Chatman and of first degree murder for the premeditated murder of Robert Cole. Furthermore, we conclude that the trial court properly admitted into evidence the photographs at issue. The probative value of the photographs outweighs any potential prejudicial effects. Finding no error in the record before us, we affirm the judgment of the trial court.

The judgment of the trial court is accordingly AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE