# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
April 12, 2011 Session

## STATE OF TENNESSEE v. BRANDON M. CARTWRIGHT

**Appeal from the Circuit Court for Gibson County (Humboldt Law Court)**
**No. H-8615       Clayburn Peeples, Judge**

---

**No. W2010-01253-CCA-R3-CD  - Filed June 10, 2011**

---

A Humboldt Law Court jury convicted the defendant, Brandon M. Cartwright, of first degree murder committed in the perpetration of a robbery, *see* T.C.A. § 39-13-202(a)(2)(2006), and especially aggravated robbery, *see id.* §39-13-403.  On appeal, the defendant argues that the trial court erred by admitting hearsay evidence and that he was denied his right to a jury of his peers because members of his race were underrepresented in the venire due to their systematic exclusion.  Discerning no infirmity in the convictions, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Michael A. Carter, Milan, Tennessee, for the appellant, Brandon M. Cartwright.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Garry Brown, District Attorney General; and Larry Hardister, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant does not challenge the sufficiency of the evidence to support his convictions on appeal.  Therefore, we will only briefly outline the evidence presented by the State to support the convictions.

On August 31, 2007, the defendant, Keith Rose, and Nicholas Hart robbed and killed the 71-year-old victim, Reggie Hicks, Jr., at the victim's home in Humboldt, Tennessee.  The three men left the scene in the victim's truck, only to abandon the truck later

when it ran out of gas. Three days later, the victim's daughter discovered the victim's body in a pool of blood on the living room floor. The victim's hands were tied behind his back, and he had died from an apparent gunshot wound to the back of his head. Authorities found the victim's truck abandoned in a parking lot the same day.

Later the same day, the defendant surrendered to the police. In a statement to the police, the defendant claimed that Mr. Rose planned the robbery and shot the victim. He recounted details concerning the offenses. Upon completion of the statement, the entire statement was read aloud to the defendant who then initialed each paragraph and signed the statement. The defendant also added a hand-written expression of remorse to the statement.

Kacy Rose, Keith Rose's brother, testified that when he learned that the defendant and his brother were wanted for questioning by the police, he asked them what had happened. He stated that the defendant began to cry and admitted that he had shot the victim.

An autopsy of the victim's body confirmed that he died of a single gunshot wound to the head. Although the bullet was recovered from the body, no gun was ever found.

Based upon this evidence, the jury convicted the defendant of first degree murder committed in the perpetration of a robbery and especially aggravated robbery.[1] In a sentencing trial, the jury found evidence to support the imposition of a sentence of life without the possibility of parole. The trial court imposed a consecutive sentence of 25 years for the especially aggravated robbery conviction. Timely post-trial pleadings followed. This case is properly before the court.

The defendant argues that his statement made to investigators was inadmissible hearsay because the written statement was a paraphrased account of his interview and, therefore, "not really his statement at all." Although he initialed each paragraph, signed the statement, and added his own hand-written expression of remorse to the document, the defendant claims that "there is insufficient evidence to prove that [he] undertook any . . . manifestation" to adopt the statement as his own. *See* Tenn. R. Evid. 803(1.2)(B) (stating as an exception to the rule against hearsay that a statement by a party-opponent is admissible if the party "has manifested an adoption" of the statement). The State contends that the trial court properly admitted the defendant's statement.

At a pretrial hearing consisting only of argument by defense counsel, counsel claimed that the defendant's written statement to Tennessee Bureau of Investigation (TBI)

---

[1] The jury acquitted the defendant, in count one, of premeditated first degree murder.

-2-

agents was not his own statement but rather the statement of the agent taking the notes. He claimed that the preliminary hearing testimony revealed that the agent used his own words, rather than those of the defendant, to formulate the statement. Counsel further claimed that no tape recording was made of the interrogation. The trial court expressed dissatisfaction with the methods employed by the TBI in taking suspects' statements, but it ruled the statement admissible, stating that "legally [the TBI] has a right to do it" that way. The statement was later admitted at trial through the testimony of the investigating agent.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). "Hearsay is not admissible except as provided by these rules or otherwise by law." *Id*. 802. The Tennessee Rules of Evidence 803 and 804 provide exceptions to the general rule of inadmissibility of hearsay.

Initially, we observe that the appellate courts of this state have at times applied different standards of review to the trial court's determination whether evidence should be excluded as inadmissible hearsay. Our supreme court has stated without analysis that hearsay determinations fall within a general rule that rulings on evidence are entrusted to the sound discretion of the trial court. *See State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010); *see also, e.g.*, *State v. Dotson*, 254 S.W.3d 378, 392 (Tenn. 2008); *State v. Brooks*, 249 S.W.3d 323, 328 (Tenn. 2008); *State v. Thomas*, 158 S.W.3d 361, 400 (Tenn. 2005); *State v. Stout*, 46 S.W.3d 689, 697 (Tenn. 2001); *State v. Stinnett*, 958 S.W.2d 329, 331 (Tenn. 1997). Of course, a lower court's discretionary determination is typically reviewed for an abuse of discretion standard. *See Franklin*, 308 S.W.3d at 809. Reliance upon the general rule regarding review of trial court evidentiary rulings is somewhat problematic because some of the notable cases relied upon as precedent did not involve the review of hearsay issues. *See, e.g.*, *State v. DuBose*, 953 S.W.2d 649, 653 (Tenn. 1997) (applying the abuse of discretion standard to relevancy issues); *State v. Campbell*, 904 S.W.2d 608, 616 (Tenn. Crim. App. 1995) (applying the abuse of discretion standard to the review of the admissibility of expert testimony); *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992) (citing *State v. Allen*, 692 S.W.2d 651 (Tenn. Crim. App. 1985), and applying the abuse of discretion standard to a relevancy determination of the admissibility of a photograph); *State v. Baker*, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989) (applying the abuse of discretion standard to the review of the use of impeachment evidence); *Allen*, 692 S.W.2d at 653-54 (citing *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978), and applying the abuse of discretion standard to the review of the admissibility of photographs and otherwise not referring to the standard in reviewing a hearsay issue); *Banks*, 564 S.W.2d at 949 (applying the abuse of discretion standard to the review of the admissibility of photographs). In *Franklin*, the supreme court adverted to the general rule of abuse of discretion review of evidentiary questions before observing that "[w]hether the admission of hearsay statements violated a defendant's confrontation rights

is, however, a pure question of law." *See Franklin*, 308 S.W.3d at 809 (citing *Lilly v. Virginia*, 527 U.S. 116, 125 (1999)); *State v. Lewis*, 235 S.W.3d 136, 141-42 (Tenn. 2007) (utilizing the same analytical framework the court applied in *State v. Maclin*, 183 S.W.3d 335 (Tenn. 2006)).

As we noted in *State v. Gilley*, however, panels of the intermediate appellate courts have applied a de novo standard to the review of hearsay issues. *See State v. Gilley*, 297 S.W.3d 739, 760 (Tenn. Crim. App. 2008) (citing *State v. Schiefelbein*, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007) ("[A] trial court's ruling on whether a statement is hearsay is a question of law, and the appellate court reviews the issue de novo without a presumption of correctness."); *Russell v. Crutchfield*, 988 S.W.2d 168, 170 (Tenn. Ct. App. 1998); *State v. Alonzo Ladon Mason*, No. M2005-01929-CCA-R3-CD (Tenn. Crim. App., Nashville, Apr. 20, 2007); *State v. Frank Lee Tate*, No. W2004-01041-CCA-R3-CD (Tenn. Crim. App., Jackson, Feb. 23, 2007), *perm. app. denied* (Tenn. 2007); *Keisling v. Keisling*, 196 S.W.3d 703, 721 (Tenn. Ct. App. 2005) ("Whether a certain statement is hearsay is a question of law, subject to de novo review."), *perm. app. denied* (Tenn. 2006); *Shelia Rae Gibbs v. Robin Media Group*, No. M1999-00820-COA-R3-CV (Tenn. Ct. App., Nashville, Aug. 25, 2000). Ultimately, in *Gilley*, we concluded that because "[n]o factual issue attends" the trial court's determination whether a statement is hearsay, "it necessarily is a question of law." *Gilley*, 297 S.W.3d at 760 (citing *Schiefelbein*, 230 S.W.3d at 128; *Keisling*, 196 S.W.3d at 721). We also determined that a hearsay statement offered to prove the truth of the matter asserted "is, purely and simply, inadmissible" and the trial court "has no discretion to hold otherwise." *Gilley*, 297 S.W.3d at 760 (citing Tenn. R. Evid. 802). Similarly, we concluded that the although the application of the various exceptions to the hearsay rule "may initially depend upon factual determinations," requiring appellate deference to the trial court's factual findings, such deference "does not equate to reviewing its application of the law to the facts for an abuse of discretion." *Gilley*, 297 S.W.3d at 760-61. Based upon these conclusions, we held that because a "trial court . . . has no discretion to exclude hearsay exception evidence that is otherwise admissible under the rules of evidence," the appropriate standard of review for hearsay issues is de novo. *Id.* at 761. Despite the recent supreme court cases utilizing the abuse of discretion standard, we conclude that the trial court's determination whether a statement should be excluded as hearsay should be reviewed de novo.

In the present case, the State contends that the defendant's statement was admissible as an admission by a party-opponent. *See* Tenn. R. Evid. 803(1.2)(B). To clear the way for admission of a hearsay statement under this exception, the declarant must have adopted the statement or indicated a belief in its truth. In this case, the defendant gave a statement of his version of the events to a TBI agent, who took paraphrased notes of the defendant's account. The TBI agent then read the statement to the defendant, who acknowledged the statement by initialing each paragraph and signing each page. The

defendant also added his expression of remorse at the conclusion of the document in his own handwriting and signed the document. The fact that the TBI agent paraphrased the defendant's account or did not take verbatim notes does not undermine the obvious conclusion that the defendant adopted the statement as his own. As such, the statement was admissible. *See Lewis*, 235 S.W.3d at 145 (Tenn. 2007) (defendant's statement may be admissible as an admission by a party-opponent). Moreover, the defendant's statement would have been admissible as a statement against interest, *see* Tenn. R. Evid. 804(3), and was otherwise admissible at trial. For these reasons, we conclude that the trial court properly admitted the statement at trial.

The defendant also argues on appeal that he was denied a jury of his peers because of an alleged systematic exclusion of African-American jurors from the venire. Following jury selection, the defendant voiced concerns that his jury pool "did not seem to be a fair cross[-]section [of the community]. . . [because it was] predominantly white" but admitted that he did not have any statistical information to substantiate his claim. The trial court overruled the defendant's motion to strike the venire at that time. At the motion for new trial hearing, the defendant presented statistical evidence through Amanda Elaine Brown, the Humboldt Law Court Clerk, to show that African Americans were underrepresented in the both the venire and the jury pool. The trial court ruled that a disparity did exist between the population of the jurisdiction and the actual number of African Americans called to the venire, but the court also held that the defendant failed to prove that the underrepresentation resulted from a systematic exclusion of African Americans from the venire.

A criminal defendant has a constitutional right to a jury drawn from a venire that represents a fair cross-section of the community. "Selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial." *State v. Bell*, 745 S.W.2d 858, 860 (Tenn. 1988) (citing *Taylor v. Louisiana,* 419 U.S. 522 (1975)). Moreover, although a defendant has no right under the Equal Protection Clause to a "'petit jury composed in whole or in part of persons of [the defendant's] own race,' . . . he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria." *Powers v. Ohio*, 499 U.S. 400, 404 (1991) (quoting *Strauder v. West Virginia*, 100 U.S. 303, 305 (1880)). In this case, the defendant points to the fact that although African Americans comprise 40 percent of the population, only 25 percent of the jury pool was African American in his case. He has failed, however, to establish discriminatory selection of the jurors.

Tennessee applies the three-pronged test set forth in *Duren v. Missouri*, 439 U.S. 357, 364 (1979), for determining whether a jury was properly selected from a fair cross-section of the community pursuant to the Sixth and Fourteenth Amendments. *State v. Buck*,

670 S.W.2d 600, 610 (Tenn. 1984). Accordingly, to establish a *prima facie* violation of the fair cross-section requirement, the defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;

> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

> (3) that this under representation is due to systematic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. at 364.

In the present case, the evidence showed that there were 18 African Americans in the 66 member petit jury pool. Statistics concerning the 287 member venire also revealed that 40 percent of the venire was non-white, with that category being further classified as 28 percent African-American, .1 percent Hispanic, and 12 percent unknown. Although the trial court commented that it could not assume the entire 12 percent of unknown participants were African-American, the record did reveal that several persons listed as unknown were known to be African-American. Accordingly, the record reveals a slight disparity between the size of the cognizable group in the community and its representation in the venire and the jury pool.

Even assuming that the underrepresentation prong is thereby established, however, the defendant has not shown that it was the result of systematic exclusion of African Americans from the jury pool. Names were selected by jury commissioners from a database created from another database of randomly selected names registered at the Tennessee Department of Safety and Voters Registration polls. Race and other vital statistics were not requested or recorded in the selection process, and there was no evidence to suggest that the commissioners were otherwise made aware of the race of potential jurors or that they thereby excluded them as members of the venire. In overruling the defendant's motion for new trial allegation, the trial court noted that the disparity in representation was likely attributable to socioeconomic factors and not to a design to exclude non-white citizens from the venire. Accordingly, the defendant has failed to establish that his right to be tried by a fair cross-section of the community was violated.

*Conclusion*

Having discerned no error, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE